## HANSCHKA v. VODOPICH et al.

Where an option for the purchase of mining property was wholly abandoned by the prospective purchaser, and payments required by the contract were not made, the purchaser could not thereafter enforce specific performance or recover an amount paid on the purchase price.

Haney, J., dissenting.

(Opinion filed, June 13, 1906.)

Appeal from Circuit Court, Lawrence County.  Hon. W. G. Rice, Judge.

Action by Edward Hanschka against Matt Vodopich and another.  From a judgment for defendants, plaintiff appeals.  Affirmed.

*Martin & Mason,* for appellant.

Time is never considered as of the essence of a contract, unless by its terms expressly so provided.  Rev. Civ. Code, § 1267; Strunk v. Smith, 8 S. D. 411; Cheney v. Libbey, 134 U. S. 68.  Where time is not of the essence of an agreement and is not made so by an offer to perform, a vendor is allowed reasonable time to perfect his title; if not so perfected a vendee may rescind and recover the part of the purchase money theretofore paid by him.  Arnett v. Smith, 88 N. W. Rep. 1041; Anderson v. Strassburger, 27 Pac. Rep. 1096; Andrew v. Babcock, 26 Atl. 717-719; Glock v. Howard Co., 43 L. R. A., 203.

*Chambers Kellar* and *Jas. G. Stanley,* for respondent.

In an option contract time is necessarily of the essence of the agreement, and that a tender or offer of payment must in effect be made within the time specified in the contract by the party seeking to enforce it.  Herman v. Winter, 20 S. D. — 105 N. W. 457; Bennett v. Hyde, 28 Pac. 104; Fargusson v. Talcot, 73 N. W. 208; Williams v. Long, 72 Pac. 911; Waterman v. Banks, 144 U. S. 394; Kelsey v. Crowther, 162 U. S. 404.

CORSON; J. This is an action to enforce specific performance of an option contract or, in case the property could not be conveyed, for a judgment for $11,500 paid by the plaintiff on account of the contract. Findings and judgment being in favor of the defendant, the plaintiff has appealed.

The original option contract between the parties was entered into in January, 1901, and for which the sum of $3,000 was paid by the plaintiff to the defendants. This contract, however, was superseded on March 20th, by a new contract, the material parts of which are as follows: "Whereas, Edward Hanschka, * * * party of the second part is desirous of purchasing said property and has . paid to the said parties of the first part, the sum of Eight Thousand Five Hundred Dollars on account of the purchase price thereof: Now, therefore, in consideration of said sum, * * * said parties of the first part have given and granted, and by these presents do give and grant unto said party of the second part, his heirs and assigns, the right and option to purchase all their interests in the following described mining property. * * * It is further agreed, that if the deferred payments above provided for are not made as herein provided, then all rights of the party of the second part hereunder shall at once cease and determine; it being understood and agreed that the party of the second part, his heirs or assigns, may elect not to make either or both of said deferred payments, without incurring any liability for damages because of such election, the sole effect of such failure to comply with this agreement being the termination of all his rights hereunder and forfeiture of all prior payments, contracts, and agreements between the parties hereto, are held to be null and void." It was stipulated that the purchase price for said property should be $25,500, $8,500 of which was paid at the time of the execution of the contract, $8,500 to be paid on June 15th, and the balance, $8,500, to be paid as soon as a receiver's receipt could be obtained from the United States Land Office, and it was further stipulated that upon making the last payment the defendants should convey to the plaintiff by good and sufficient warranty deed all their interest in the property. There were a number of other stipulations not material for the purposes of this decision.

The questions presented for review on this appeal are thus

stated by the learned counsel for the plaintiff: "The question involved in this case is: Whether the plaintiff's failure to make the second payment of $8,500 due June 15, 1902, forfeited not only all his right under said contract to a conveyance, but also his right to recover the $11,500 theretofore paid by him on account of the purchase price of said properties. The appellant contends: (1) That the failure to make the payments due June 15, 1902, was excused by the defects then existing in defendant's title. (2) That if such failure was not actually excused by such defects, yet that those defects were sufficient to relieve the appellant of all imputation of grossly negligent, willful, or fraudulent breach of duty, and that they were sufficient, therefore, to save him from forfeiture of the $11,500 theretofore paid by him upon the purchase price of said properties. (3) That in any event the contract of March 20, 1902, did not, by its terms, expressly declare time to be of the essence thereof, and that consequently appellant's offer of performance made on December 23, 1902, was sufficient and cast upon defendants the duty of complying with their contract or returning to appellant the purchase money theretofore paid by him. Upon the first and second contentions there is a conflict of evidence as to the facts; the findings of the court being largely against appellant. Enough, however, is conceded upon which to base the contentions in question. The third contention of appellant is one of law, pure and simple, arising on the fact of the option agreement between appellant and respondents, and in no wise complicated or involved by adverse findings of fact." The defendants, on the other hand, contend (1) that in an option contract time is necessarily of the essence of the same, and that it is not necessary to specify therein that time is made of the essence thereof; (2) that the failure of the plaintiff to pay the sum payable on June 15th absolutely terminated the contract, and that the defendants were thereafter relieved from all liability to make a conveyance under the same; (3) that the contract being terminated and at an end on June 15th, by reason of the failure to make the payment at that time there was no liability on the part of the defendants to repay to the plaintiff the sum theretofore paid by him.

We are inclined to take the view that the defendants are right in their contention. It will be observed that the contract upon

which the action is based is an option contract, and that the plaintiff
does not therein bind himself to the performance of any act on his
part or the payment of any sum whatever. And it will also be no-
ticed by the last clause of the contract that it was understood and
agreed that the party of the second part might elect not to make·
either or both of said deferred payments without incurring any lia-
bility for damages because of such election; the sole effect of such
failure to comply with the agreement being the termination of· all
his rights therein and forfeiture of all prior payments. An option
contract is clearly distinguishable from a bilateral contract of pur-
chase and sale, in which a vendor is bound to· make the conveyance·
and the vendee is bound to pay the purchase price, and the law ap-
plicable to the two classes of cases is well defined.

It is contended as we have seen in the case at bar, that there·
being no express provision in the contract that time should be re-
garded as of the essence of the contract, time cannot be regarded as
material. But this contentnon is clearly untenable, as in an option
contract time is necessarily material, whether or not so specified
therein. In such a contract the agreement on the part of the owner·
of the property is that he will convey the same to the party holding
the option upon condition that certain payments therein specified
are made upon certain specified dates, and upon failure to make·
such payments at the time or times specified the contract is termin-
ated and the rights of the party holding the option are at an end..
Hunt on Tender, § 19; Herman v. Winter, 20 S. D. — 105 N. W..
457; Gira v. Harris, 14 S. D. 542, 86 N. W. 624; Smith v. Detroit
Co., 17 S. D. 414, 97 N. W. 17; Hobart v. Frederikson, 20 S. D. —
105 N. W. 168; Waterman v. Banks, 144 U. S. 394, 12 Sup. Ct.
646; Fargusson v. Talcott, 7 N. D. 183, 73 N. W. 207; Clark v.
American Mining Co., 28 Mont. 468, 72 Pac. 978; Merk v. Bow-
ery M. Co., 31 Mont. 298, 78 Pac. 519; Bennett v. Hyde, 92 Cal.
131, 28 Pac. 104; Whiteman v. Perkins, 56 Neb. 181, 76 N. W.
547; Martin v. Morgan, 87 Cal. 203, 25 Pac. 350; Williams v.
Long et al., 139 Cal. 186, 72 Pac. 911; Kelsey v. Crowther, 162·
U. S. 404, 16 Sup. Ct. 808. In the case of Waterman v. Banks,
supra, the Supreme Court of the United States, in discussing this.
subject, says: "The principles by which a court of equity is gov--

erned in cases of this character are well settled. Mr. Justice Story
says that 'notwithstanding the rule is well established in courts of
equity that time will not be regarded as indispensable, in regard to
decreeing specific performance of contracts for the actual sale of
lands on one side and the actual purchase on the other, it is differ-
ent where the contract gives a mere election to purchase upon cer-
tain conditions. Accordingly, where upon a lease, with the right
of purchase within seven years, upon giving three months' notice,
and paying a fixed sum at the expiration of such notice, and the
lessee gave the requisite notice, but did not pay the money in time,
a bill for specific performance was dismissed. And a similar de-
cision was made by the Lord Chancellor, where his lordship said:
"The things required must be done in the order of sequence stip-
ulated. These were notice and the payment of the money, on a day
certain.'" Eq. Jur. § 777a. * * * The rule is well expressed in Lord
Ranelagh v. Melton, 2 Drew. & S. 278, where it was said: 'No
doubt if an owner of land and an intending purchaser enter into a
contract constituting between them the relation of vendor and pur-
chaser, and there is a stipulation in the contract that the purchase
money shall be paid and the contract completed on a certain day,
this court, in ordinary cases, has established the principle that time
is not of the essence of the contract, and that the circumstances of
the day fixed for the payment of the money and the completion of
the purchase being past does not entitle either party to refuse to
complete. On the other hand, it is well settled that when there is a
contract between the owner of land and another person, if such
person shall do a specific act, then he (the owner) will convey the
land to him in fee, the relation of vendor and purchaser does not
exist between the parties unless and until the act has been done as
specified. The court regards it as the case of a condition, in the
performance of which the party performing it is entitled to a cer-
tain benefit; but in order to obtain such benefit he must perform
the condition strictly. Therefore, if there be a day fixed for its
performance, the lapse of that day without its being performed pre-
vents him from claiming the benefit.'" And in the case of Clark
v. Mining Co., supra, the Supreme Court of Montana, in discussing
this subject says: "The contract was unilateral, and by its express

terms time was of its essence. 'There is a decided distinction between an option to purchase, which may be exercised or not by the prospective purchaser, anl an absolute contract of sale, wherein one of the parties agrees to sell and the other to buy certain property, the sale to be completed within an agreed time. In the latter case, of course, the mere lapse of time, with the contract unperformed, does not entitle either party to refuse to complete it, and therefore time is not of the essence of the contract. But where the contract is merely an option, generally without consideration, and especially as applied in mining property, of course, as pointed out in the last preceding sections, time is of its essence. The prospective purchaser must act promptly within the time specified, or his right to purchase is gone.' Snyder on Mines, § 1378. And see Lindley on Mines, § 839; Settle v. Winters, 2 Idaho, 199, 10 Pac. 216; Pomeroy on Contracts, § 387; Fry on Specific Performance (3d Ed.) § 1052."

The contention of the plaintiff, therefore, that time is not of the essence of the contract in the case at bar for the reason that it has not been expressly made so by the terms of the contract as provided by section 1267, Rev. Civ. Code, and construed by this court in Strunk v. Smith, 8 S. D. 407, 66 N. W. 926, is not tenable; for as we have seen, time is not only necessarily of the essence of an option contract, but in the case at bar time is expressly made of the essence of the contract by the terms thereof, though not in the precise language of the statute. This was the view taken by the Supreme Court of California in construing a similar contract in Bennett v. Hyde, supra, notwithstanding the Code of California contains the same provision in regard to time being of the essence of the contract as is found in our Code. In that case the court, in discussing the subject, says: "Appellant seems to concede that such would be the effect of the language used but for section 1492 of the Civil Code, which he claims renders it necessary for the parties in their contract to declare in so many words that time is of the essence of the obligation to give it that effect. At law, time has always been considered of the essence of the contract. But equity, unwilling to permit a forfeiture if it can be avoided, has held otherwise except when the parties have so expressed their intent, or it is

clearly to be inferred. This rule, we think, it was intended to adopt in the Code provision, limiting it, however, where the delay is capable of exact compensation, by requiring that the intent shall expressly appear in the contract. But courts of equity have always held that such intention is expressed when the contract provides, as in this case, that performance must be on time, or the party or parties shall lose all rights under it. Time is of the essence of the contract when performance must be on time to entitle a party to its performance by the other party. Where this is expressed in the contract, the parties have expressly declared that time is of the essence of the obligation." Hermann v. Winters, supra. From the authorities cited on this subject, it seems to be settled that in an option contract time is necessarily of the essence of the contract, and that unless the payments are made or tendered at the time specified in the contract the same is terminated, and all liability on the part of the owner of the property to make such conveyance is at an end. Clearly, therefore, the defendants were not bound to convey after failure to pay the June installment.

This brings us to the consideration of the other important questions presented in this case, namely, as to whether or not the plaintiff is entitled to recover back the money paid by him on account of the contract. It is contended by plaintiff that, conceding that the contract cannot be enforced by requiring the defendants to convey the property, still the plaintiff is entitled to recover the amount of this action paid by him less the damages sustained by the defendant, under the decision of this court in Barnes v. Clements, 12 S. D. 276, 81 N. W. 301, but we are of the opinion that this contention is untenable. While such a rule was adopted by this court in bilateral contracts for the sale and purchase of real property, such a rule has no application to option contracts. It would seem that the authorities agree that in an option contract the money paid on account thereof cannot be recovered back by the party paying the same, but that it can be retained by the owner of the property to whom it has been paid. Clark v. Am. Min. Co., supra; Reddish v. Smith, 10 Wash. 178, 38 Pac. 1003; Lawrence v. Miller, 86 N. Y. 131. In the case of Clark v. Mining Co., supra, the Supreme Court of Montana, in discussing the subject of the right of the plaintiff

to recover back money paid by him on account of the option contract, says: "But as to option contracts generally, the rule is thus stated in Warvelle on Vendors, § 824: 'An option of purchase rests on different grounds, and is governed by different rules, from those which obtain in case of bilateral contracts. Where the time for acceptance is not limited, it must, if given for a consideration, remain open for a reasonable time, to be determined by all the circumstances of the case; but if the option reserved is to purchase at any time before a certain day for a certain sum, to be paid on demand for deed, time is of the essence of the contract, and equity cannot relieve after the time, nor require the repayment of money paid to secure the option.' And we think that because of the peculiar conditions surrounding contracts for the sale of mining property, where the contract is unilateral, or in the nature of an option, providing for partial payments upon the purchase price at stated times, it is the manifest intention of the parties that the vendor shall retain all payments made, unless it is directly specified to the contrary; and although the contract be mutually rescinded, unless it affirmatively appears from the contract of sale, or in the agreement to rescind, that the vendee is to have the payments made by him refunded, he cannot recover them." The above case is directly in point, for the reason that the action in that case was to recover back $165,000 paid by the plaintiff on account of an option contract for the purchase of mining property similar to the one at bar, and the learned Supreme Court of Montana reversed the judgment of the trial court in favor of the plaintiff for the amount so paid, and held, in effect, that the plaintiff was not entitled to recover back the money so paid. In the case at bar it will be noticed that the plaintiff paid originally the sum of $3,000 for the option contract or for the privilege of purchasing the property. It could not reasonably be claimed that the plaintiff, under any circumstances, could recover back this $3,-000 so paid for the option. The contract of March 20th resulting in a new agreement was, in effect, on the part of the defendant, that on the payment of $8,500 the option or right to purchase should continue until June 15th, and neither at law nor in equity is the plaintiff entitled to be repaid by the defendant the amount so paid, as the money so paid was the only consideration for the op-

tion contract, and its retention by the defendants was the only damages which they were entitled to recover for the failure of the plaintiff to carry out the terms of the contract. In a contract for the sale and purchase of property, where one party is bound to convey upon the payments of certain stipulated sums and the other party binds himself to make the payments so stipulated, the owner of the property may recover the purchase price. In such cases a vendor may, at the proper time, tender a deed and demand his money, and if time is not made of the essence of the contract and no such tender of the deed and demand of payment is made, the purchaser is not held to a strict compliance with the terms of the contract as to time, and may subsequently to the expiration of such time make a tender of the money due. Pier v. Lee, 14 S. D. 600, 86 N. W. 642.

It is contended by the plaintiff that by reason of the existence of a lease on a small portion of the premises included in the contract and the existence of an option contract in favor of Mr. Frank upon which a suit was commenced to enforce such contract prior to the time fixed for the June payment, the plaintiff was excused from making or tendering the payment at the time specified. In the view we take of the case it will not be necessary to determine on this appeal whether or not a party may be excused, by reason of fraud, concealment, or misrepresentation of defects in a title on the part of the owner, or accident or mistake on the part of the holder, of the option, or for any other cause constituting grounds for the rescinding of a contract as provided by chapter 2, tit. 5, Rev. Civ. Code, from the nonpayment or failure to tender the payment within the time specified in the contract, as from the findings of the court in this case it clearly appears that there was no such fraud, misrepresentation, concealment, mistake, accident, or any ground for a rescission of the contract, and that the plaintiff knew, at the time he entered into the contract, the condition of defendants' title to the property and the existence of the lease and the Frank contract, and that he entered into the contract with the full knowledge of these defects, if there were defects in defendants' title. The findings of the court upon this subject, which seems to be fully sustained by the evidence, are, in substance, that the plaintiff was interested as part owner in a number of mining claims included in the contract;

that he had knowledge of the Frank contract and knew that it was an option contract and that said Frank had never complied with the conditions of the same and the same was terminated long prior to the contract entered into by him on March 20th; that he knew of the existence of a lease on a small portion of one of the mining claims, and he himself owned a majority interest in said claims. It will therefore be observed, by the findings of the court, that there was no fraud, misrepresentation, or concealment as to any defects in their title by the defendants, and that the plaintiff was not prevented from making the payment of June 15th by reason of any accident or mistake, and that there was no valid excuse on the part of the plaintiff for his failure to make such payment at the time specified. The plaintiff cites and relies upon the case of Barnes v. Clement, 12 S. D. 270, 81 N. W. 301, in support of his contention that the money paid in this case could not, under the statute, be deemed forfeited, but that he was entitled to recover back the same less the amount of damages which the defendant might sustain. But in that case it will be observed by an examination of the same that the contract between the parties was a bilateral contract, and not a unilateral or option contract, as in the case at bar. As before stated, the law applicable to bilateral and unilateral or option contracts is not the same, and the decisions upon the two classes of cases are based upon entirely distinct principles. We are clearly of the opinion, under the terms of the contract and the facts as found by the court in this case, therefore, that the plaintiff is not entitled to recover back all or any part of the moneys so paid by him on account of said contract.

There is, however, another and perhaps more satisfactory ground upon which the judgment of the circuit court can be sustained, namely, the abandonment of the contract before the 15th of June, when the second payment was made. It appears from the findings of the court, fully sustained by the evidence, that prior to the 15th of June the plaintiff had repudiated or abandoned the contract in controversy. Upon this subject the court finds as follows: "(8) The court further finds that the plaintiff was not, on June 15, 1902, ready nor willing to make the said payment of $8,500 provided for upon said date in said contract, but that the said defend-

ants were, at all times, up to the time of the repudiation of the said contract by the said plaintiff and on June 15, 1902, ready, able, and willing to perform said contract in all things by them required to be performed. That after the repudiation of said contract by the plaintiff in May, 1902, and subsequent to his default in the payment of said $8,500 on June 15, 1902, said Plaintiff, Hanschka, reassigned the said Barron lease to the said Charles Barron, and the said Charles Barron has since assigned the same to a third party, to-wit, John Treber, who now holds the same. (9) The court further finds that during the winter and spring of 1902 certain capitalists from the city of Boston were negotiating for the purchase of large bodies of mining ground in the vicinity in which said premises hereinbefore described are situated, and that the said plaintiff, Haischka, secured the said option of March 20, 1902, from the defendants upon said property for the purpose and with the expectation of selling said properties to said eastern capitalists, together with certain other properties either adjoining said properties or in the immediate vicinity thereof which the said Hanschka either owned or had obtained options upon. That one payment of about $35,000 was made to said Hanschka by said eastern capitalists upon said deal, and that the second payment fell due about the 1st day of May, 1902, which said second payment was not made; the said eastern capitalists abandoning said options and forfeiting the said previous payment. That subsequent to the falling through of said deal there was a depreciation in the values of mining properties in and about said vicinity, including the values of said properties in question. That said properties are mining properties of fluctuating values, and that for several months subsequent to the falling through of said deal with said eastern capitalists the value of said properties described in said contract of March 20, 1902, depreciated, and that said properties began again to appreciate and increase in value in the fall of 1902, and that the values of the said properties at the time of the commencement of this action, which was commenced on February 18, 1903, were materially greater than in the latter part of May or on June 15, 1902. That said properties, on March 20, 1902, were and they are now of the value of about $50,000. (10) * * * That there

has been no failure or refusal on the part of the defendants to comply with any of their agreements, but that such failures and defaults have been on the part of the plaintiff."

It will thus be seen that the plaintiff in effect repudiated and abandoned his contract without any agreement with or consent of the defendants, so far as the record discloses, for the reason that the eastern capitalists who had taken an option contract from him had abandoned their contract and declined to take the property, and the further fact that the property had depreciated in value. It is quite clear from the findings of the court that the option contract was taken from the defendants for the purpose of conveying the property to the eastern capitalists, and when they failed to carry out the terms of their contract the plaintiff repudiated and abandoned the contract with the defendants. The plaintiff having repudiated and abandoned his contract the same was absolutely terminated, and the plaintiff could not thereafter enforce the same or recover any sum paid thereon.

The judgment of the circuit court and order denying a new trial are affirmed.

FULLER, P. J. Though not entirely satisfied that the contract under consideration is of a character making time of its essence, because not by its terms expressly so provided, I concur in affirming the action of the court below on the ground that appellant had forfeited every right thereunder by abandonment and repudiation long before the commencement of this action.

HANEY, J., dissents.