BEDELL, Appellant, v. STEELE, et al, Respondents

(28 N. W.2d 369)

(File No. 8860. Opinion filed June 30, 1947.)
Rehearing Denied September 6, 1947.

**A. J. Beck,** of Elk Point, for Appellant.

**Everett A. Bogue** and **Alan Bogue,** both of Vermillion, and **C. M. Stilwill,** of Sioux City, Iowa, for Respondents.

ROBERTS, J. January 17, 1938, plaintiff recovered a judgment against defendant John W. Steele for $12,505.18 and costs. December 30, 1942, plaintiff took out execution which was wholly unsatisfied.

January 8, 1944, plaintiff brought this action seeking an adjudication that he is the holder of a judgment lien against an undivided one-half interest in certain real property. The trial court held that the evidence failed to establish such claim and entered judgment denying the relief sought. Plaintiff has appealed.

Defendant John W. Steele alleged in his answer that he has no interest in the land described in the complaint except as trustee for his two daughters. He claimed this interest by virtue of a contract wherein Ella Steele, his aunt, agreed to convey the premises. The contract reads as follows:

"This agreement made this 8th day of April, 1936, between Ella Steele, of the City of Sioux City, Woodbury County, Iowa, Party of the First Part, and Sarah Steele and John W. Steele of the County of Clay in the State of South Dakota, Parties of the Second Part,

"Witnesseth: The Party of the First Part agrees to sell unto the Parties of the Second Part the following described real estate situated in the County of Clay, in the State of South Dakota, to-wit:

"The West Half and the West Half of the East Half of Section Thirty (30), in Township Ninety-three (93), North of Range Fifty-two (52), Containing 450.05 acres more or less, For the sum of Five Thousand Six Hundred Fifty-two ($5,652.00) Dollars, and the said Parties of the Second Part agree to purchase said real estate from the First Party and to pay to the said First Party, her heirs, assigns or legal representatives at the City of Sioux City, Iowa, the said sum as purchase price therefor in the manner following, to-wit:

"The sum of $332.50 on the first day of February, 1937, the sum of $332.50 on the first day of August, 1937, and a like sum on the first days of February and August of each succeeding year thereafter until the full principal sum aforesaid shall have been fully paid. No interest shall be paid on the aforesaid semi-annual installments until maturity, but each of said installments shall bear interest at the rate of six per cent per annum after maturity.

"The said Party of the First Part, on receiving the said principal, and interest on the said installments after maturity thereof, if any such interest shall have accrued, agrees that she will execute and deliver to said Parties of the Second Part, a Warranty Deed conveying to them the said premises free of all encumbrances, except taxes and special assessments payable in 1935 and thereafter, and except for liens and encumbrances created or imposed against said premises by Second Parties, either prior or subsequent to the date of this Contract. And in furtherance hereof the said First Party has this day executed and delivered in escrow to C. M. Stilwill, Attorney, at Sioux City, Iowa, a Warranty Deed of said premises, as herein provided,

and this Agreement shall be his authority to deliver the said deed to Second Parties, their respective heirs or legal representatives, on the receipt of evidence satisfactory to him showing the full payment of the purchase price of the said premises, as herein provided, and on the full and faithful performance of all of the provisions of this contract on the part of Second Parties to be kept and performed.

"Said Parties of the Second Part hereby agree that all improvements now upon or hereafter placed upon said premises shall remain thereon and not be destroyed until full payment is made under this Contract, and agree also to pay all taxes and assessments that may become a lien on said property before the same become delinquent. In case Second Parties fail to make the payment aforesaid, or any part thereof, promptly when due, or fail to pay the taxes and assessments, or any part thereof, before they become delinquent, or fail to perform any of the agreements herein made or required, and six months shall have elapsed after any such failure or delinquency, time being of the essence hereof, then in any such case the Party of the First Part shall have the right at her option to declare the entire balance of said purchase price with interest to be due and payable, and to cancel and forfeit the interests of Second Parties therein in the manner provided by law, and in such case Second Parties shall have no right for reclamation or compensation for money or property paid or improvements made, but such payments or improvements, if any, shall be retained by First Party as compensation for the use of said property or as liquidated damages for the breach of this contract, and if after such cancellation Second Parties shall be in possession of said real estate they shall be treated as tenants holding over after the expiration of a lease. First Party, in the event of default, shall further have the right to bring an action for the specific performance of this Contract, or may proceed in equity to foreclose the same.

"Neither the extension of the time of payment by First Party of any sum or sums of money to be paid by Second Parties, as above provided, nor any waiver by First Party

of her right to declare this Contract forfeited by reason of any breach thereof by Second Parties, shall in any manner affect the right of First Party to declare this Contract forefeited because of the failure of Second Parties to promptly make any payment subsequently maturing, and no extension of time shall be valid unless evidenced by a duly signed instrument. First Party at her option may pay taxes, assessments, or any liens created or suffered against the premises after the same become delinquent and any sums so paid shall bear interest at eight per cent from date of payment and this Contract shall be security for the same. Second Parties further agree that so long as this Contract shall remain in force they will in all respects properly till and farm the said lands, keep the buildings in good state of repair and suffer no waste to be committed. They shall, while this Contract remains in force, continue in the possession of said premises and will not lease or sublet the same, or any part thereof, nor sell, assign, or transfer their respective interests in this Contract without the consent in writing of said Party of the First Party.

"It is especially understood and agreed that the interest accruing to the said John W. Steele by virtue of this Agreement shall be and is in trust for his minor daughters, Sarah Ella Marcine Steele and Mary Ruth Steele, and that except for the payment or advancement by him of the said minors' proportionate share of the installments of purchase price hereafter to be paid, including taxes, improvements, or other upkeep of the premises over and above the share of said minors in the rents accruing therefrom, the said John W. Steele shall have no beneficial interest in the said real property or in any part thereof whatsoever by virtue hereof or otherwise. For the convenience of said minor daughters he shall hold the legal title to their undivided half interest in said real property when this Contract shall have been fully performed and deed shall have been executed as herein provided, but as soon as the younger daughter shall have attained the age of twenty-one years, he shall convey the full title unto them, and they shall be liable to him only for such portions of the purchase price, including taxes or other necessary repairs or upkeep as he may have

paid or advanced in their behalf, after having charged himself with the reasonable rental for the use and occupancy of said premises.

"This Agreement shall bind the respective heirs and legal representatives of the parties hereto."

The trial court found that Thomas J. Steele, an uncle of defendants John W. Steele and Leo A. Steele, entered into a contract in 1914 with his nephews for the sale of the land involved in this action in consideration of covenants on their part, their heirs and assigns, to maintain the property in repair, pay taxes and to make annual payments of $2,250 for a period terminating with the death of the survivor of the vendor and his wife Ella Steele; that Thomas J. Steele died in 1920; that his widow having succeeded to all of his interest under the contract obtained in 1934 a judgment foreclosing the contract; that at the time of the commencement of that action John W. Steele was indebted to plaintiff in the present action and owed to judgment creditors approximately $50,000; that the contract of April 8, 1936, was between Ella Steele and John W. Steele as trustee for his two minor daughters; and that there was no evidence that John W. Steele paid any part of the consideration thereunder from his own means.

Plaintiff contends that the language of the contract of April 8, 1936, contemplated that John W. Steele take the property for his own benefit and that no trust was created. It is claimed that the use of the words "Sarah Steele and John W. Steele * * * parties of the second part" and the words "this agreement shall be his [escrow holder] authority to deliver the said deed to second parties, their respective heirs or legal representatives" shows a lack of intention to transfer the property in trust. A trust is created only if the settlor manifests an intention to create a trust. SDC 59.0105. Whether Ella Steele manifested an intention to convey an undivided one-half interest to John W. Steele in trust or to convey it to him for his own benefit is a question of interpretation of the contract. The principle that a contract must be construed as a whole and the intention of the parties is to be ascertained from the entire

instrument and not from detached portions is too well settled to require discussion of the authorities. Taking into consideration the insolvency of John W. Steele and the circumstances under which the contract was made and construing the instrument as a whole, it is plain that the object Ella Steele had in mind was to convey an undivided one-half interest to her nephew in trust and not to him beneficially.

Plaintiff does not claim that John W. Steele had any right or interest, legal or equitable, in the land involved in this action at the time the trust agreement was made. She had the unquestionable right to convey the property to whomsoever she desired. The controversy is narrowed to the question of the alleged payment of the consideration by the debtor for the one-half interest in the property.

■ SDC 59.0102 contains the following provisions: "When a transfer of real property is made to one person and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." Interpreting these provisions, this court has held that they are declaratory of the common law and that when the facts and circumstances under which a deed is taken clearly shows that the consideration was paid by the debtor and the title taken in the name of another person, equity will apply the property to the payment of the obligations of the debtor. Watt v. Morrow, 19 S. D. 317, 103 N. W. 45; see also Smith v. Tosini, 1 S. D. 632, 48 N. W. 299.

The only witness examined was John W. Steele. The documentary evidence introduced by plaintiff includes the trust agreement, judgments rendered against the insolvent debtor John W. Steele, tax receipts for several years showing payments by Steele Brothers and mortgages given by Steele Brothers upon farm chattels and crops grown upon the land in question. It appears from the evidence that the debtor and his brother Leo A. Steele occupied and farmed the land for several years prior to 1944. While it is true that there were payments made by checks drawn on the account of Steele Brothers, it does not appear that such payments exceeded the reasonable rental value of the land.

It was expressly stipulated in the trust agreement that when the younger daughter attains the age of twenty-one years the trustee is to convey the title to them and that they shall be liable to him only for such portion of the purchase price including taxes and costs of repair which he shall have paid in their behalf after having charged himself with reasonable rentals for the occupancy and use of the premises. Plaintiff must show that his debtor has disposed of property that might otherwise have been subjected to the satisfaction of his judgment.

 Plaintiff contends that the evidence is sufficient to give rise to a presumption that John W. Steele was in fact the purchaser and that the burden was upon the defendants to establish the bona fides of the transaction. The effect of his argument is that where the transfer complained of is between relatives the burden is upon the parties to show the good faith of the transaction. We recognize that in some instances the burden is on the parties to the transfer to show good faith. Smith v. Poppen, 57 S. D. 25, 230 N. W. 229; Sprick v. Screiner, 58 S. D. 394, 236 N. W. 299. So far as concerns the rights of the plaintiff and other creditors there was nothing to prevent the conveyance of the property in trust for the daughters of the debtor. She had the right to make a gift of the land to them or to sell it at less than its actual value. As said in State Bank of Woolstock v. Schutt, 174 Iowa 583, 156 N. W. 762, 763: "The appellant first argues that the evidence, meager as it is, discloses enough to warrant and require the inference that the insolvent husband was the real purchaser, and that the title to the land was taken in the wife's name to hinder, delay, and defraud his creditors. The ground thus taken is untenable. It may be conceded that the debtor's father desired by this conveyance to assist the insolvent son and his family, and to do this in a manner which would not expose the property given or conveyed to any hazard of subjection to the payment of the son's debts. In that there was no fraud. He was under no obligation to pay his son's debts, and, if he saw fit to give the land to his son's wife or to sell it to her at less than its real value, he neither defrauded nor assisted in defrauding the son's creditors." We do not think that

the mere relationship of the parties and the circumstances surrounding their dealings were such as to shift the burden of proof and relieve the plaintiff from proving that the purchase of the one-half interest in the property was made by the debtor with his own mnoey. The evidence as presented in the record, we think, justifies the findings of the trial court.

The judgment appealed from is affirmed.

RUDOLPH and SMITH, JJ., concur.

POLLEY, J., not sitting.

SICKEL, Presiding Judge (dissenting).

This is an action in equity, and "the court will look at the facts and circumstances surrounding the transaction, regardless of mere matters of form and determine therefrom the real nature of the transaction." Watt v. Morrow, 19 S. D. 317, 103 N. W. 45, 47.

The facts in this case are that Ella Steele sold this land to John W. Steele and Sarah Steele in equal shares, on an executory contract, for a consideration of $5,652 payable in installments. The purchase price for John W. Steele's half interest has been paid from funds in which he also had a half interest. John W. Steele was insolvent when the contract was made and has been insolvent ever since. His obligation to plaintiff, now in judgment, existed when the contract was made and has never been paid. Ella Steele did not give the property away, but sold it for a valuable consideration. Since the consideration has been paid John W. Steele is now entitled to a deed conveying his half interest in the property. The contract however contains a provision to the effect that the interest of John W. Steele is held in trust for his two minor daughters. These daughters have never paid anything to any one for an interest in this land. The land was bought and paid for with John Steele's money, and to the extent of his investment it is his property subject to his debts, existing at the time the investment was made. As this court said in Smith v. Tosini, 1 S. D. 632, 48 N. W. 299, 302: "She suffers nothing from such a decree. The law simply takes the money, or the property into which it has been converted, which he has

attempted to give to her, and subjects it, or so much of it as may be necessary, to the payment of his debts. It uncovers the fraudulent donation, and exposes it to the view and reach of his creditors."

If the conveyance had already been made to the father and by him to the daughters the rule stated in Dorrington v. Jacobs, 213 Wis. 521, 252 N. W. 307, 91 A. L. R. 737 and annotation 741 would apply.

Respondents argue that the minor daughters are obligated by the contract to reimburse the father for his investment in the property, less rental for the period of his occupancy. In my opinion this argument is unsound for the following reasons: First; John W. Steele bought the land and promised to pay the purchase price. Second; the contract gives possession of the property to John W. Steele, the purchaser, not to the daughters, and contains no obligation to pay rent during the period that the contract remains executory. Third; the daughters were six and eight years of age when the contract was made, and the record shows no acceptance of the benefits of the so-called trust on behalf of the minors, nor the assumption by the minors of the obligation of the father to pay the purchase price of the land.

For the reasons stated I believe the judgment should be reversed.