94 N.J. Super. 348 (1967)
228 A.2d 352
GULF OIL CORPORATION, A PENNSYLVANIA CORPORATION, PLAINTIFF,
v.
MARIANO MONTANARO, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 23, 1967.
*350 Messrs. Vieser, Hoey and San Filippo, attorneys for plaintiff. (Mr. W. Eugene San Filippo appearing).
Messrs. Hein, Smith and Mooney, attorneys for defendant (Mr. John T. Mooney appearing).
LORA, J.S.C.
This was originally an action for reformation of a lease agreement and for specific performance of an option to purchase. However, only the latter count for specific performance now remains for the court's determination.
*351 Defendant Mariano Montanaro is the owner of certain premises located on the northeast corner of Market Street and Midland Avenue in the Borough of East Paterson. As a result of negotiations between the parties, plaintiff Gulf Oil Corporation as tenant, and defendant as landlord, entered into a written lease agreement demising the premises on December 7, 1955. At the time of the execution of the lease title to the premises was held by Mariano Montanaro and Minnie Montanaro, his wife, as tenants by the entirety. Mrs. Montanaro is now deceased. Defendant is also the owner of land adjacent to the demised premises. At the time of the lease agreement and subsequent thereto the whole of defendant's property (leased and nonleased) constituted a single undivided lot.
According to the terms of the lease, a printed form submitted by plaintiff during the course of negotiations, the premises were to be leased for a term of five years beginning on January 15, 1956. In addition, plaintiff-lessee was given an option to renew the lease for an additional term of five years. For the original five-year term the rent was to be $325 per month, and in the event that the lessee exercised its option to renew the lease for the second five-year term, the rent was to be $350 per month. In the early part of 1961 plaintiff chose to exercise the renewal option and was thus in possession as lessee for a ten-year period.
Paragraph 16 of the lease agreement provides, in relevant part:
"In consideration of One ($1.00) Dollar and other good and valuable considerations, receipt whereof is hereby acknowledged, Lessor hereby grants to Lessee, its successors and assigns, an option to purchase the premises herein described at any time during the term of this lease or any renewal or extension thereof, for the sum of Seventy-five Thousand Dollars ($75,000.)."
In addition, the following typed provision was inserted in the agreement at defendant's request as paragraph 17:
*352 "Option to meet offer to purchase. It is agreed that if Lessor, at any time during the term of this lease or any extension or renewal thereof, receives one or more bona fide offers from third parties to purchase the demised premises, and any such offer is acceptable to Lessor, then Lessor agrees so to notify Lessee in writing, giving the name and address of the offeror and the price, terms and conditions of such offer, and Lessee shall have ninety (90) days from and after the receipt of such notice from Lessor in which to elect to purchase the property for the consideration and on the terms and conditions contained in said bona fide offer If Lessee does not elect to purchase or does not purchase said property, and Lessor either sells or fails to sell the property to anyone [sic] or more of such third parties who may make such offer or offers, then in any and all such events all of the terms, provisions, conditions and privileges of this lease, including this option, and the other rights of lessee under this lease shall continue in full force and effect."
No offer, as provided in paragraph 17, was ever made. Plaintiff now asks the court to order the specific performance of the fixed price option to purchase the premises (i.e. $75,000) as provided in paragraph 16 of the lease instrument, plaintiff, on July 15, 1965 and after lease extension negotiations had failed, having notified defendant in writing that it was exercising its option to so purchase. Upon defendant"s refusal to tender a deed, the instant proceedings were commenced by plaintiff.
The exercise of the option to purchase by plaintiff involves a severing of defendant's property since defendant, as noted above, demised only a portion of his holdings to Gulf. Such severance, of course, necessitates subdivision approval by the planning board of the municipality. The requisite approval resolution was passed by the board at a time subsequent to trial, application having been made by plaintiff just as soon as defendant consented to the reformation sought in the complaint. However, the secretary of the board is holding the matter in abeyance until such time as this court renders its decision. The court considers that such approval renders moot some of defendant's trial arguments, and does not agree with his position that the court, in deciding this case, may not consider the favorable action of the planning board.
*353 Defendant contends that equity may not order specific performance of a contract where compliance rests in the will or discretion of a third party uncontrolled by defendant. But here, since the planning board has approved the subdivision, this objection has been rendered academic and should no longer serve as a bar to the court's granting of specific performance. Then, too, even if subdivision approval had not as yet been obtained, it would appear that the granting of specific performance might nevertheless be ordered by the court but entry of judgment be withheld until subdivision approval actually issued. Similarly defendant's contention that the court's granting of specific performance would permit the parties to circumvent the requirements of the Municipal Planning Act and the Planning Board of East Paterson is now without merit. Defendant's' additional argument of supervening impossibility of performance is, of course, negated by the planning board's approval of the subdivision.
N.J.S.A. 40:55-1.23 provides:
"If, before approval or favorable referral and approval have been obtained, any person transfers or sells or agrees to sell, as owner or agent, any land which forms a part of a subdivision, which, by ordinance, the planning board, or the planning board and the governing body are required to act, such person shall be subject to a fine not to exceed two hundred dollars ($200.00) or to imprisonment for not more than thirty days and each parcel, plot or lot so disposed of shall be deemed a separate violation.

* * * * * * * *"
Defendant, citing this statute, contends that an agreement, the performance of which is opposed to public policy and/or forbidden by statute under penalty of fine or imprisonment, is illegal and void. It is apparently his contention that application for subdivision approval should have been made at some time prior to the time when Gulf actually made its application, perhaps contemporaneously with the lease agreement itself. Contrary to this assertion, the court believes that plaintiff's application to the planning board was timely. There is no requirement of subdivision where the premises *354 are merely leased; the initial point at which subdivision would be necessary is when the ownership of a single tract is to be divided. In the instant case that would be at the time when Gulf informed defendant that it was going to exercise the option to purchase, for only then would the ownership of the tract originally held in toto by defendant be divided. This was the procedure followed by Gulf.
Sanction, at least implicit, for this procedure is given in Popular Refreshments, Inc. v. Fuller's Milk Bar, 85 N.J. Super. 528 (App. Div. 1964), a case heavily relied upon by defendant to support his contentions. In that case the court criticized plaintiff for not appealing from an adverse ruling of the planning board, and accordingly denied specific performance of the option to purchase, but nowhere did the court indicate or imply that application for subdivision approval should have been made at some time prior to the exercise of the option or that the court would have denied specific performance if the planning board had approved the subdivision. Thus, this court concludes that Gulf's application was timely and that the approval of the planning board obviates this objection by defendant to the court's granting specific performance.
As noted above, paragraph 16 of the printed form lease gave Gulf, as lessee, the option to purchase the property for $75,000. In addition, paragraph 17, entitled "Option to meet offer to purchase'" and included at the insistence of defendant-lessor, permitted Gulf to match any bona fide offers the lessor may have received for the sale of the premises. Defendant contends that these two provisions are repugnant and when read together are vague, ambiguous and equivocal, and therefore plaintiff did not possess an absolute option to purchase but at most had a preferential option to purchase conditional upon defendant-lessor's desire to sell.
However, the defendant quite obviously felt the option clause did not afford him adequate protection in the event a desirable opportunity to sell occurred, and consequently *355 he insisted on the so-called right of refusal clause, in the event an offer was made to him by a third person during the lease term.
While there are many cases in New Jersey dealing with the validity of an option to purchase or a first refusal option contained in a lease, neither this court nor counsel have been able to discover any New Jersey case which has passed upon the relationship of such clauses to one another where they are both contained in a lease agreement.
The court conceives that there might be situations where the two clauses are repugnant, causing one to yield to the other. In Shell Oil Co. v. Blumberg, 154 F.2d 251 (5 Cir. 1946), for example, a bona fide offer was made by a third party to the lessor. The offer, which exceeded the lessee's option to purchase at the fixed price by several thousand dollars, was communicated by the lessor to the lessee. The lessee failed to exercise its right to meet the bona fide offer and subsequently sought specific performance of its option to purchase at the price fixed in the lease. The court denied specific performance, ruling that the option to purchase at the fixed price was extinguished when the lessee failed to match the bona fide offer at the higher price. The logic behind this ruling is clear: if the lessee were permitted always to rely on his fixed price option to purchase even in the face of a higher bona fide offer, the first refusal option provision would be rendered nugatory.
The present situation, however, is clearly distinguishable. No third party made an offer to defendant-lessor during the term of the lease, and the only option which plaintiff-lessee seeks to exercise is its right to purchase the premises at the fixed price of $75,000. In this situation the court agrees with the reasoning of the Supreme Court of Oregon in Shell Oil Company v. Boyer, 234 Or. 270, 381 P.2d 494, 498 (1963), which said:
"Since the only option which Shell seeks to exercise is the fixed-price option, it is not necessary to decide whether, in some other case, there might be a latent ambiguity between the two option provisions. *356 The dual-option provisions commonly found in service station leases have been fruitful sources of litigation. Some courts have taken the view, as the trial court apparently did in the case at bar, that the two severally unambiguous options somehow become ambiguous when read together. See, e.g., Shell Oil Co. v. Blumberg, 154 F.2d 251 (5th Cir. 1946). While it might be possible to conceive of a factual setting in which the two option clauses could not be read together without conflict, we need not explore such possibilities in this case. The lessors have suggested that the very existence of the first-refusal option in the lease made the fixed-price option unworkable. * * * We hold that the fixed-price option is an independent covenant that speaks for itself. See Sinclar Refining Co. v. Allbritton, 147 Tex. 468, 218 S.W.2d 185, 8 A.L.R.2d 595 (1949). Since the purchase-refusal option was never invoked in this case, we deem it irrelevant that some real or imaginary ambiguity might have been pleaded as a defense if the purchase-refusal option had been exercised or tendered. Cases elsewhere discuss the problems that may arise when an asserted conflict between the two options is relied upon for relief from one of them. See, e.g., Gulf Oil Co. v. Rybicki, 102 N.H. 51, 149 A.2d 877 (1959); and Annotation, 8 A.L.R.2d 604."
Thus, this court concludes, as did the Oregon Supreme Court, that there is no inherent ambiguity caused by the presence of the two options in the same instrument. Additionally, the court is of the opinion that defendant may not be heard to argue ambiguity since it was he who insisted on the inclusion of the first refusal option, thereby himself creating any ambiguity which could possibly exist.
Defendant also juxtaposed the two option clauses for another purpose. He contends that the inclusion of the right of first refusal indicated the lessor's dissatisfaction with the option price and negated any intention on defendant's part to sell at the option price. Why this should be so is not made clear, but at trial, on cross-examination of Edgar C. Weber, the representative of Gulf who negotiated the lease, defendant's counsel pursued a line of inquiry by which he sought to establish that the Montanaros were vigorously opposed to giving an option and that Gulf and the Montanaros considered the $75,000 figure offered by the Montanaros so ridiculously high that Gulf would never want to exercise the option and buy at that price. Weber denied *357 ever having made a statement to defendant that Gulf would not buy at $75,000, so that the Montanaros need not concern themselves about such option. Rather, Weber stated it was his belief the price of $75,000 might have been suggested by Mrs. Montanaro knowing the price was so high she would sell at that price. Weber had sought an option price of much less than $75,000 and he did say that at the time of negotiations $75,000 would have been too high for Gulf to ever consider a purchase. On further cross-examination Weber admitted that Mrs. Montanaro was "convinced" into signing because she felt that the property would never be purchased by Gulf at that figure. The court notes that even though defendant was in the courtroom during the trial, he was not called to refute Weber's denial. However, it is the court's opinion that at best the testimony is inconclusive, but the court, having observed the witness's demeanor and appraised his testimony, gives it credence and finds the Montanaros were not opposed to an option at a price which they felt was adequate, $75,000, and a price Weber said was double the amount real estate was moving at for a time and which he figured was ridiculous. To again borrow the words of the Oregon Supreme Court in the Boyer case, supra:
"If the lessors did read the option to purchase, but chose to disregard its plain language in favor of the agent's alleged assurance that Shell would never exercise such an option, then in that event * * * their ignorance or mistake is not wholly innocent." (381 P.2d, at p. 497)
In the present case defendant was represented by counsel after preliminary negotiations, and more particularly during the discussions regarding the option clause and execution of the lease. The first refusal clause was inserted at his counsel's request. Defendant read the lease and was familiar with the option and purchase price, as indicated by his initials in the margin of the option provision clause. Paragraph 16, which embodies the fixed price option, is clear and unambiguous. Thus, even assuming arguendo that *358 Weber did make the statement as alleged by defendant, that Gulf would not exercise the option at the $75,000 figure, the court finds that reliance on the statement by defendant, if indeed there was any, was unjustified in light of the factual circumstances enumerated above and insufficient to nullify the clear wording of the option.
The fixed price option provision of paragraph 16 of the lease is valid and may be specifically enforced, and it stands unimpaired by the provision of paragraph 17 of the lease.
The description of the leased property contained in the lease agreement varied from the intended demise by creating a gore of approximately three feet to one foot along the easterly portion of the premises, abutting upon the Erie Railroad. Plaintiff's complaint therefore, as I have stated above, also sought reformation of the lease so as to have it comply with the proper description of the property and to eliminate the gore.
Just prior to trial defendant conceded the mutual mistake and agreed to the reformation requested by plaintiff. As a result thereof, on the day of trial, plaintiff was preparing its application to the planning board of the borough for a subdivision of defendant's premises. Said subdivision was approved by resolution of the board on February 8, 1967 and after the trial herein. However, as stated above, it would appear that the secretary of the board is holding the matter in abeyance, even though there is a resolution by the board approving the necessary minor subdivision here involved, until such time as the court renders its decision.
The sequence of events is relevant to defendant's defense of laches. Defendant asserted delay in that Gulf's exercise of the option to purchase was dated July 15, 1965 but it had done nothing to secure necessary subdivision approval down to the time of trial, while it should have done so prior to this suit. Plaintiff properly points out that any application for subdivision approval would have been a futile gesture before the elimination of the gore by a *359 successful prosecution of the suit for reformation and specific performance instituted in December of 1965 and brought on for trial on January 11, 1967. The court finds no laches that may be asserted against plaintiff, nor any prejudice to defendant.
In view of all of the foregoing, the court concludes that plaintiff is entitled to specific performance of the option to purchase. An appropriate form of judgment will be submitted, which judgment, however, will not be signed by the court until a certified copy of the resolution of the planning board approving the subdivision is filed with the court. Additionally, defendant Montanaro is directed to refrain from taking any steps to oppose or subvert plaintiff's application for subdivision approval.