Marshall O. **CROWLEY** and Maurine
Patterson, **Plaintiffs and Appellees,**

v.

**TEXACO, INC., Defendant and
Appellant.**

**No. 13243.**

Supreme Court of South Dakota.

Argued March 23, 1981.

Decided June 10, 1981.

Rehearing Denied July 10, 1981.

George S. Mickelson of McCann, Martin
& Mickelson, P. C., Brookings, for plaintiffs
and appellees.

Mark H. Virshbo, Oak Brook, Ill. and
Richard O. Gregerson of Woods, Fuller,
Shultz & Smith, Sioux Falls, for defendant
and appellant; H. L. Fuller and Francis M.
Smith of Woods, Fuller, Shultz & Smith,
Sioux Falls, on brief.

FOSHEIM, Justice.

This action for a declaratory judgment involves interpretation of purchase options in a lease agreement. We reverse the trial court's determination that appellant cannot purchase the property for a fixed price.

The lessors (appellees) are brother and sister. They own the real estate in question, which is located in Brookings, South Dakota. They acquired title by descent from Margaret F. Akin, deceased, subject to a filling station lease agreement with Texaco, Inc. (appellant). That agreement was dated March 9, 1955, with the lease term to commence on June 1, 1955, and contained this provision:

(11)—OPTION TO PURCHASE. Lessor hereby grants to lessee the exclusive right, at lessee's option, to purchase the demised premises, free and clear of all liens and encumbrances, including leases, (which were not on the premises at the date of this lease) at any time during the term of this lease or any extension or renewal thereof,

(a) for the sum of Twenty Two Thousand dollars; it being understood that if any part of said premises be condemned, the amount of damages awarded to or accepted by lessor as a result thereof shall be deducted from such price,

(b) on the same terms and at the same price as any bona fide offer for said premises received by lessor and which offer lessor desires to accept. Upon receipt of a bona fide offer, and each time any such offer is received, lessor (or his assigns) shall immediately notify lessee, in writing, of the full details of such offer, including the name and address of any offeror, whereupon lessee shall have thirty (30) days after receipt of such notice in which to elect to exercise lessee's prior right to purchase. No sale of or transfer of title to said premises shall be binding on lessee unless and until these requirements are fully complied with.

Any option herein granted shall be continuing and preemptive, binding on the lessor's heirs, devisees, administrators, executors, or assigns, and the failure of lessee to exercise same in any one case shall not affect lessee's right to exercise such option in other cases thereafter arising during the term of this lease or any extension or renewal thereof.

Upon receipt of lessee's notice of election to exercise any option granted herein, which notice shall be given in accordance with the Notice Clause of this lease, lessor shall immediately deliver to lessee, at lessor's expense, a complete Abstract of Title or other evidence of title satisfactory to lessee, and shall also furnish, at lessor's expense, an up-to-date survey by a licensed or registered professional engineer or surveyor showing elevation of property and corners marked with concrete monuments, upon receipt of which the lessee shall have a reasonable time in which to examine title and, upon completion of such examination if title is found satisfactory, shall tender the purchase price to lessor, and lessor shall thereupon deliver to lessee a good and sufficient Warranty Deed conveying the premises to the lessee free and clear of all encumbrances (including without limiting the foregoing the rights of dower and/or curtesy). All rentals and taxes shall be prorated between grantor and grantee to the date of delivery of the aforesaid deed. The lease also contained this extension grant:

The lessor hereby grants to the lessee the right and option to extend this lease for an additional period of five years from and after the expiration of the first ten year term and a second five years from and after the expiration of the first five years renewal, and a third five years from and after the expiration of the second five year renewal and fourth five years from and after the expiration of the third five year renewal each renewal on the same terms and conditions. Lessee shall notify lessor in writing of its election to extend this lease sixty days prior to the date of the expiration of the term of this lease and notice thereof shall

be deemed sufficient if given in the manner hereinafter provided.

If appellant utilized all extensions, the lease would expire on May 31, 1985. Activation of the last five-year extension required a 60-day notice prior to May 31, 1980. On December 31, 1979, appellees received an attractive offer to purchase the property from Taylor Oil Company. The offer was communicated to appellant on January 7, 1980, pursuant to paragraph (11)(b) of the lease. Through inaction, appellant failed to exercise its right to purchase with regard to that offer. By letter dated March 12, 1980, however, appellant notified appellees of its election to exercise its (11)(a) fixed price option under the lease agreement for the sum of $22,000.00.

The trial court concluded that appellant's rights to purchase the subject property under paragraph (11)(a) of the lease agreement terminated when the appellees notified appellant of the offer made by Taylor Oil Company, but that appellant nevertheless had a right to extend the lease for another five-year term by giving written notice to appellees sixty days prior to the date of the expiration of the term, which it failed to do. Hence, the lease expired on May 31, 1980.

Appellant contends that any option granted under the lease agreement is continuing, pre-emptive, and binding upon the appellees and their assigns, but concedes it is unlikely that a third party would bid in excess of the fixed price because appellant's right to exercise its option under (11)(a) could cause the third party to lose the excess. It is appellant's position that the amount of a third party offer does not affect its rights, unless the offer is less than the $22,000 fixed price, in which event appellant may elect to purchase the property for the lower price rather than continue to rent. Appellant claims that just as it chose to lease, rather than purchase the property for $22,000, since the original 1955 lease, it may likewise have preferred to continue the lease arrangement rather than exercise its right to meet a third party offer of less than $22,000.

Appellant maintains if it fails to exercise its (11)(b) option to meet a third party offer, appellee can then sell the property, subject to its continuing option. Each successive offer must then be submitted to appellant under (11)(b) by appellees' assigns and, at any time during the term of the lease, appellant could purchase the property for $22,000 regardless of the number of assignments or who then owned it.

Paragraph (11)(a) is a complete option. It gives the optionee the right to purchase the property at his election within an agreed period at a named price. *Sinclair Refining Co. v. Allbritton*, 147 Tex. 468, 218 S.W.2d 185 (1949). An (11)(b) provision in a lease which gives the lessee the first opportunity to purchase the property for a price the lessor would receive from another party does not, until the lessor gives notice to the lessee, constitute an 'option' as that term is usually understood, but rather a mere right of refusal or first right to purchase. However, when the lessor gives notice pursuant to such provision, the two (the provision and the notice) become an option. *Imperial Refineries Corporation v. Morrissey*, 254 Iowa 934, 119 N.W.2d 872 (1963). Since the lease agreement refers to both provisions as options, we will do likewise where appropriate.

An instrument that grants both an (11)(a) option and an (11)(b) right to purchase poses some interesting legal problems concerning which the authorities are not in accord. As noted in Annot., 8 A.L.R.2d 604 (1949), however, the cases that have construed such dual options involve a considerable variety of option provisions and the construction applied in each case related to the individual instrument before the court.

One line of cases hold, as did the trial court in this case, that if the lessee does not purchase after due notice of a bona fide offer, then the optioner, by selling the premises, terminates the fixed price option. *Shell Oil Co. v. Blumberg*, 154 F.2d 251 (5th Cir. 1946); *Manasse v. Ford*, 58 Cal.App. 312, 208 P. 354 (1922); *Harding v. Gibbs*, 125 Ill. 85, 17 N.E. 60 (1888); *Northwest Racing Association v. Hunt*, 20 Ill.App.2d

393, 156 N.E.2d 285 (1959); *Adams v. Helburn*, 198 Ky. 546, 249 S.W. 543 (1923).

The construction accepted by other authorities is that unless otherwise provided in the lease, the two provisions are separate and distinct. *Sinclair Refining Co. v. Clay*, 102 F.Supp. 732 (N.D.Ohio 1951), aff'd, 194 F.2d 532 (6th Cir. 1952); *Cities Service Oil Co. v. Estes*, 208 Va. 44, 155 S.E.2d 59 (1967). The lessee may exercise his option to purchase for a fixed price without regard to the provision for first right of purchase. *Gulf Oil Corp. v. Montanaro*, 94 N.J.Super. 348, 228 A.2d 352 (1967). The lessee's rights under an (11)(a) type option have thus been held to be continuing and are not extinguished by the failure of the lessee to earlier exercise a first right to purchase after notice of an offer from a third person. *See:* 51(C) C.J.S. Landlord & Tenant § 88(11).

One of the leading cases adhering to the latter view is *Butler v. Richardson*, 74 R.I. 344, 60 A.2d 718 (1948). The Rhode Island Supreme Court concluded that a fixed price option similar to (11)(a) was clear, explicit, and not coupled with or conditioned upon any other agreement. Regarding the first refusal provision, the Court said:

> But the question here is what effect this provision for a first refusal has, if any, upon the provision for an option. As we indicated above it has no effect whatever. The right of option remains unimpaired. Until the time prescribed for its exercise expires, the respondents cannot sell for any amount without complainants' consent. However, the provision for a first refusal may nevertheless serve a useful purpose. It provides a means whereby respondents, if they desired, could induce an acceleration of complainants' decision to purchase by affording them an opportunity to purchase at a price more advantageous to them than the price fixed in the option. Of course the provision could not serve this purpose if the offer was at a higher price, and consequently it is inconceivable that the parties in agreeing to the provision could have contemplated any offer except one that was lower than $15,000. We are of the opinion, therefore, that the provision for a first refusal should be construed in that light, not so much as an alternative to the provision for an option but rather as a supplement thereto.

74 R.I. at 349–50, 60 A.2d at 722.

█ A purchase option is placed in a lease for the benefit of the lessee and is to be construed with that in mind. *Butler v. Richardson*, supra. It will be exercised only when it is to the advantage of the optionee to do so. If the option agreement was fair and reasonable when made, the fact that the property subsequently increased in value is not a controlling circumstance, *Rausch v. Hanson*, 26 S.D. 273, 128 N.W. 611 (1910); *Imperial Refineries Corporation v. Morrissey*, supra, and does not warrant a refusal to carry out its terms, *Cities Service Oil Co. v. Viering*, 404 Ill. 538, 89 N.E.2d 392 (1949).

█ In considering the contract, it must be construed as a whole, and the intentions of the parties is to be ascertained from the entire instrument. Every effort should be made to give effect to every part of the contract and the interpretation should not be such as to excise any provisions. *Eberle v. McKeown*, 83 S.D. 345, 159 N.W.2d 391 (1968); *Bedell v. Steele*, 71 S.D. 609, 28 N.W.2d 369 (1947); *Manasse v. Ford*, supra. In that light, we turn to an analysis of this agreement.

█ According to (11)(b), each time a bona fide offer is received the lessor (*or his assigns*) is obligated to notify the lessee and give him a first right to purchase. The agreement further provides that "[a]ny option * herein granted shall be continuing and preemptive, binding on the lessor's . . . *assigns*, and the failure of lessee to exercise same in any one case shall not affect lessee's right to exercise such option in other cases thereafter arising during the term of this lease or any extension or renewal

---

* Similar words were construed in *Cities Service Oil Co. v. Viering*, 404 Ill. 538, 89 N.E.2d 392 (1949), to mean either the first or the second option and that the exercise of either would create a contract of sale.

thereof." (Emphasis supplied). There could be no such continuing obligation on lessor's assigns if failure to meet a bona fide offer terminated the purchase rights of the lessee. The interpretation applied by the trial court consequently fails to give full effect to that part of the agreement.

We conclude that a harmonious construction of the option provisions is that the right to purchase under (11)(b) was simply an agreement giving the lessee the first chance to make a contract on the same terms which another bona fide purchaser had offered. *Shayeb v. Holland*, 321 Mass. 429, 73 N.E.2d 731 (1947). When the option held by appellant under (11)(a) was timely exercised, it ripened into a bilateral contract, *Kuhfeld v. Kuhfeld*, 292 N.W.2d 312 (S.D.1980); *Renner v. Crisman*, 80 S.D. 532, 127 N.W.2d 717 (1964), and vitiated the right of the lessor to otherwise sell the property under (11)(b). *American Oil Company v. Cherubini*, 351 Mass. 581, 222 N.E.2d 892 (1967). That conclusion allows all the option provisions in the lease to be given full effect and renders unnecessary a review of possession rights under the lease.

The judgment is reversed and the case is remanded for further proceedings consistent with this decision.

WOLLMAN, C. J., and MORGAN, J., concur.

DUNN and HENDERSON, JJ., dissent.

HENDERSON, Justice (dissenting).

Under the majority opinion, the thirty-day requirement under (11)(b) is meaningless. If, indeed, it is meaningless, then why did the parties place it in the lease agreement?

The contracting parties placed 40 words in (11)(a) and 114 words in (11)(b). Reasonably, I must conclude that the parties attached equal significance to (11)(a) and (11)(b), if not more to (11)(b). Under the majority's rationale, the lease is entirely for the benefit of Texaco. I cannot believe that this is fair as the lease was supported by valid consideration with mutual benefits.

I do not believe that (11)(b) can be disregarded. Texaco had a dual option. At anytime during the initial term or any renewals of the lease agreement, it could have purchased the property for $22,000 under (11)(a). If Texaco did not exercise the (11)(a) option, it still could have used (11)(b) to meet the terms of a bona fide offer, providing it agreed to meet the terms of that offer within thirty days after receipt of the notice required to be given it by the owners of the property. The facts reveal that Texaco did not act until after a sixty day notice was given by the owners. Notice of the bona fide offer was given on January 7, 1980, and Texaco did nothing until March 12, 1980.

Furthermore, Texaco refused to meet the terms of the bona fide third party and elected to offer $22,000 under (11)(a). The option does not give Texaco an absolute right to purchase for $22,000 at any time it chose. Texaco was required to timely act under its option, and this it failed to do. This being an option contract, time was of the essence, and failure to meet the notice requirement is to be construed against the party failing to timely exercise the option granted. The option is lost if not timely exercised. *Hanschka v. Vodopich*, 20 S.D. 551, 108 N.W. 28 (1906); *Herman v. Winter*, 20 S.D. 196, 105 N.W. 457 (1905).

In a strikingly similar factual setting, the Supreme Court of Iowa reached a result contrary to the majority holding here. The same type of an option as is involved in this case, that is a dual option as it has been called, was interpreted by the Iowa Supreme Court in *Imperial Refineries Corporation v. Morrissey*, 254 Iowa 934, 119 N.W.2d 872 (1963). In *Morrissey*, the option terms were as follows:

"If this lease be in effect to March 1, 1961, Lessee shall either have the option, right and privilege to purchase the following described property situated in Jefferson County, Iowa, to wit: (land described) at a mutually satisfactory price not to exceed the sum of $22,000 cash or Lessee shall have the right and privilege to renew this lease for a further period of

four years commencing the first day of March, 1961, upon the same terms and conditions as are set out in this lease.

"If during the period and term of this lease and any extensions thereof, lessor, successors or assigns shall have the opportunity to sell the property last above described at a bona fide sale, lessee shall have the right and privilege of the first refusal thereof at the same price and terms as any bona fide offer for said last above described property."

Id., 119 N.W.2d at 874.

The Iowa court held that the oil company's failure to exercise its option at the $22,000 price prior to the time when a bona fide offer was communicated to them constituted a waiver of its right to exercise the option, and in doing so the court stated:

... This type of dual option containing both an option to purchase at a specified price during a specified period and the right to purchase at a price offered by a third person is not unusual and has posed many interesting legal problems. As the wording varies in each contract, the specified provision must be examined to determine the intention of the parties. The annotation found in 8 A.L.R.2d 604 presents a review of the cases in which this problem has been involved. As we hold plaintiff [oil company] waived the right to exercise the option to purchase at a specified price, it is not necessary for us to determine the exact effect of these dual options upon each other.

Id., 119 N.W.2d at 875.

I would affirm the judgment of the trial court.

I am authorized to state that Justice DUNN joins in this dissent.