RICE v. SCHERTZ. (No. 5679.)*

(Court of Civil Appeals of Texas. San Antonio. May 17, 1916. Rehearing Denied June 14, 1916.)

1. LANDLORD AND TENANT ⬅111 — FORFEITURE OF TENANCY—ASSERTION OF ADVERSE TITLE.

A tenant who disavows his landlord's title and asserts title in himself forfeits his rights as a tenant and becomes a mere trespasser.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 336; Dec. Dig. ⬅111.]

2. TRESPASS TO TRY TITLE ⬅41(1)—DEFENSES—SUFFICIENCY.

In trespass to try title, evidence *held* sufficient to sustain a verdict for plaintiff, where defendant had repudiated the contract of tenancy under which he claimed lawful possession, and thereafter had asserted adverse title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 62; Dec. Dig. ⬅41(1).]

Appeal from District Court, Caldwell County; Frank S. Roberts, Judge.

Action by William Schertz against Emmett Rice. Judgment for plaintiff, and defendant appeals. Affirmed.

S. R. Graves and Monroe & Richards, all of Lockhart, for appellant. Jeffrey & Fielder, of Lockhart, and S. S. Searcy and C. C. Clamp, both of San Antonio, for appellee.

FLY, C. J. This is an action of trespass to try title to 3,846 acres of land out of the Barnard Klecamp survey in Caldwell county, Tex., instituted by appellee against appellant. Appellee also applied for and obtained a writ of sequestration and took possession of the crops on the land. Appellant disclaimed having possession of any except 160 acres of the land, and claimed possession of that under a rental contract for the year 1913, and "that at the time this suit was brought defendant was asserting—no claim nor title to the said land and premises, as owner of same, except under his rental contract, as aforesaid, and as tenant only." He sought to recover damages for the wrongful and malicious issuance of the writ of sequestration. The cause was tried by jury, and resulted in a verdict and judgment in favor of appellee for the land sued for, and against appellant on his cross-action. The cause was submitted to the jury on three special issues, two of which were as to appellant's repudiation of a compromise of an action of forcible entry and detainer, made by his attorney, said action having been instituted by appellee in May, 1913, and an assertion of title to the land. The jury found that appellant did repudiate his agreement to acknowledge the ownership of appellee and to surrender possession of the land on December 1, 1913, and that he asserted title to 160 acres of the land just prior to August 16, 1913, when this suit was instituted.

The facts clearly show that appellant was on the land in 1912, asserting title and ownership to the same, that appellee, through an action of trespass to try title, recovered the land from appellant, and he was permitted to remain on the land, upon promising to work the land as the tenant of appellee and sign a written contract and acknowledgment of his ownership. A written agreement to this effect was presented to appellant in January, 1913, which he failed and refused to sign and began to set up a claim of ownership to the land. Thereupon, in May, 1913, appellee brought an action of forcible entry and detainer against appellant, but under an agreement with appellant's attorney, appellant was to be permitted to stay on the place until December 1, 1913. Appellant at once repudiated that agreement and asserted title to the land. He said he would not give up the place; "that he had not had a fair deal, and that the lawyers and judge had sold him

out; and that he had gotten a good lawyer now; and that he was going to hold the place." After the forcible entry and detainer suit went against him and the agreement as to his remaining on the land until December, 1913, by paying the rent, had been made he said: "Well, I never told Ellis to sign that and I am not going to abide by it." That was in July, 1913. He was claiming the land at that time. He promised to sign the lease contract in January, 1913, but afterwards refused to do so. He paid no rent for 1912 or 1913. The evidence is conclusive that appellant was asserting title to the land until this suit was instituted in August, 1913, and, when employed after the crops were sequestered to assist in gathering the same, he sold some of the crop and appropriated the money.

[1] The agreement in January, 1913, with appellant was that he might stay on the place and cultivate the land if he would sign a certain lease contract. This he refused to do, and asserted adverse title to the land. At all times during the year (1913) that he was on the land he was a trespasser, and nothing more. The relation of landlord and tenant never at any time existed between appellee and appellant. The creation of that relation depended on the execution of the written contract, which appellant refused to execute, and repudiated any tenancy. He produced the crop after such repudiation, and while asserting title to the land.

Appellant seeks to invoke the contract made by Ellis as attorney for appellant after the suit of forcible entry and detainer had been filed as his authority for being on the place, but he at once repudiated that agreement, denounced his attorney for executing it, and stated that he was not bound by it. At no time was he in lawful possession of the land, for his tenancy and right to possession were to date from his execution of the lease contract, and that was repudiated by him. He did not at any time expect to sign the contract for he never read it to ascertain its contents. He evidently intended from the first to defy appellee and contest his title to the property. He was from the first an aggressive trespasser, boldly asserting his right and title to the property. He was notified that he could not stay on the place when he refused to sign the contract, and knew that he had no right to plant a crop on the place. He did not invoke a tenancy to justify his retaining possession of the place, and he had no right to any crops raised on the place. He terminated any tenancy he may have had by repudiating it and claiming adverse title to his landlord. Calhoun v. Kirkpatrick, 155 S. W. 686.

What conduct upon the part of a tenant towards a landlord shall be considered an adverse holding to the landlord depends on the peculiar facts and circumstances; but it is the rule that when a tenant disavows his landlord's title and claims the premises for himself or some one else, he thereby forfeits his lease and title. Underhill, Landlord and Tenant, pages 968, 969, § 579. In the case of Turner v. Smith, 11 Tex. 620, it was held:

"Yet, where the tenant disclaims to hold under his lease, he becomes a trespasser, and his possession is adverse, and as open to the action of his landlord as a possession originally acquired by wrong. The relation of landlord and tenant is dissolved, and each party is to stand upon his right."

In the case of Wildey Lodge v. City of Paris, 31 Tex. Civ. App. 632, 73 S. W. 69, it was held:

"The title to the lots in controversy is in appellant, and if, as alleged in the petition, the city has repudiated the lease, abandoned its rights thereunder, denied the title of appellant and asserted title in itself, then its possession has ceased to be rightful, and appellant is entitled to the relief sought."

[2] After the judgment in the first action of trespass to try title, brought by appellee against appellant, the latter was a trespasser upon the land, because he was told he could not remain upon the land unless he signed a written lease contract. That he refused to do, and claimed the land which it had been adjudicated he did not own. As said in Love v. Perry, 111 S. W. 203, a similar case to this:

"The judgment was for the land, which included the crops standing thereon that had not been severed from the land."

The cases cited by appellant have no applicability to the facts of this case. The cases supposed by appellant are not like the one made by the facts of this case. Appellant was never in lawful possession, but if he was in such possession in January, 1913, he repudiated the title of his landlord shortly thereafter, and asserted title in himself. He at once became a trespasser, and continued a trespasser while planting and cultivating the crop.

Not only did appellant repudiate his lease for some future date, but for the present and all times, and the language used by the Supreme Court in Kilgore v. Baptist Association, 90 Tex. 139, 37 S. W. 598, is peculiarly appropriate, where it is held:

"The intention to abandon the contract at some future date is no breach of it, but, when that intention is declared in positive terms and unconditionally, it has the effect, in so far as the promisor is able to do so, to repudiate the contract itself and to terminate the contractual relations between the parties."

If appellant was lawfully in possession of the land under a contract in the early part of 1913, but repudiated it, he was a trespasser, and the court did not err in refusing to submit the first issue presented by appellant. The issue was improperly drawn because it ignored the repudiation by appellant of his tenancy.

The fourth and fifth assignments of error are without merit, and are overruled, and the sixth assignment is too complicated and multifarious to be considered.

The judgment is affirmed.