**SINCLAIR REFINING CO. et al. v.
ALLBRITTON et ux.**

No. 2791.

Court of Civil Appeals of Texas. Waco.

July 15, 1948.

Rehearing Denied Aug. 12, 1948.

Cantey, Hanger, McKnight & Johnson and Sloan Blair, all of Fort Worth, for appellants.

Scott, Wilson & Cureton, of Waco, for appellees.

HALE, Justice.

This suit hinges upon the meaning and effect of certain optional provisions contained in an extensive indenture of lease. The indenture was written by Sinclair Refining Company, was dated September 20, 1935 and was signed by C. B. Allbritton and wife as Lessors and by the Company as Lessee. It consists of twenty-three related Articles, each dealing rather minutely with an appropriate sub-heading. Under the provisions contained in Arts. I, II, III and VIII thereof, Lessors agreed in substance to erect a service station, in accordance with plans and specifications therein referred to, upon a described tract of land situated in the City of Waco and to demise and lease said premises to Lessee for a term of ten years at a rental of $80 per month.

By the provisions of Art. XIII, under the sub-heading of "Extension Option," Lessors granted to Lessee the exclusive option of extending the term of the lease for five years, "to commence, if said option is exercised, at the expiration of the term herein granted. Lessee shall give written notice to Lessors of its election to exercise this option not less than thirty (30) days before the expiration of the original term of this lease." Arts. XIV and XV, hereafter set forth in full, relate to "Purchase Option" and "Purchase Refusal," respectively. By the former, Lessors granted to Lessee the exclusive option of purchasing the demised premises at any time during the original or extended term of the lease for the sum of $12,000, "provided Lessee shall give Lessors not less than thirty (30) days' notice of Lessee's exercise of this option." By the latter, it was provided that if Lessors should receive from a third party "at any time during the term of this lease" a bona fide offer to purchase the leased premises and should decide to sell the same for the amount named in the offer, Lessors should promptly give written notice thereof to Lessee and thereupon Lessee should have the option of purchasing the premises for said price and that Lessee should notify Lessors in writing within ten days after receipt of such notice whether it would exercise such purchase option. Art. XVI relates to "Breach or Default" and provides in effect that if Lessee should default in the payment of rentals, or otherwise, and should remain in default for a period of 30 days after notice thereof, Lessors should have the right of terminating the lease and declaring the same at an end.

In due time Lessee entered into possession of the demised premises and prior to the expiration of the original term of the lease it properly exercised its option to extend the term thereof for five additional years, in accordance with the provisions of Art. XIII of the indenture. On November 13, 1946, Lessee prepared written notice to Lessors that it had elected to exercise its option to purchase the leased premises for the sum of $12,000, in accordance with the provisions of Art. XIV of the indenture. This notice was duly deposited in the United States mails at Lessee's New York office and was received by Lessors on November 21, 1946. Thereafter, on November 25, 1946, while the extended term of the lease was in full force and effect, Lessors duly deposited in the mail at Waco, written notice to Lessee that they had received a bona fide offer from one Jim Clark of Waco to purchase the premises for the sum of $17,500, that they had decided to sell the same for that amount and that they were ready and willing to convey the premises to Lessee for such amount, in accordance with the provisions contained in Art. XV of the indenture. After receiving the latter notice, Lessee notified Lessors by letter dated November 29, 1946, that it was standing upon its asserted right to purchase the property for the sum of $12,000.

On February 12, 1947, Lessors instituted this suit against Lessee and its sub-tenants as a formal action in trespass to try title to the property described in the indenture of lease, alleging as ground therefor a breach and repudiation by Lessee of the terms of the lease contract. Lessee answered with a plea of not guilty, and by cross action sought specific performance of its asserted contract of purchase and sale of the demised premises for the sum of $12,000 by reason of its alleged exercise of its option to purchase for that amount. The case was tried before the court without a jury and re-

sulted in judgment for Lessors and against Lessee on its cross action. Lessee has appealed.

By the six points upon which its appeal is predicated, appellant says the court below erred (1) "in refusing to give effect to its purchase option as contained in Article XIV of the lease contract"; (2) "in refusing to enforce the binding executory contract for the sale of the land in dispute, which contract came into existence immediately upon the giving to appellees by appellant of notice of appellant's exercise of the purchase option"; (3) "in giving effect to the purchase refusal clause (Article XV) after there had come into existence a valid and enforceable contract for the sale of the land at $12,000.00"; (4) "in failing and refusing to construe Article XIV of the lease contract as a separate and distinct entity, apart from Article XV"; (5) "in construing Article XIV (purchase option) of the lease contract in connection with Article XV (purchase refusal) of the lease contract, so as to deprive appellant of its right to purchase the land for $12,000.-00"; and (6) "in terminating appellant's lease, together with its purchase option, on the land in dispute and in holding that appellant had breached and repudiated the lease contract by reason of appellant's insistence on its rights to purchase the property for $12,000.00 in accordance with its purchase option."

■ It is elemental that the intention of the parties to a contract controls its interpretation. Barber v. Herring, Tex.Com. App., 229 S.W. 472, pt. 3; Reconstruction Finance Corp. v. Gossett, 130 Tex. 535, 111 S.W.2d 1066, pt. 4 and authorities. In arriving at such intention, it is the duty of the courts to consider the contract as a whole and to give reasonable meaning and harmonious effect to all related provisions thereof where that can be legally done. Swisher v. Grumbles, 18 Tex. 164; Davenport v. Sparkman, Tex.Com.App., 208 S.W. 658, pt. 1; Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442, pt. 2 and authorities; Nevels v. Harris, 129 Tex. 190, 102 S.W.2d 1046, pt. 7, 109 A.L.R. 1464; Citizens Nat. Bank v. Texas & P. R. Co., 136 Tex. 333, 150 S.W.2d 1003, 1006. As said by the

court in the last case above cited: "It is not usually proper to consider a single paragraph, clause, or provision by itself, to ascertain its meaning. To the contrary, each and every part of the contract must be construed and considered with every other part, so that the effect or meaning of one part on any other part may be determined."

Arts. XIV and XV of the contract here involved are in full as follows:

"Article XIV.

"Purchase Option:

"In consideration of the premises and further considerations herein specified, Lessors hereby give and grant to Lessee the exclusive option and privilege of purchasing the demised premises and Lessors' right, title and interest in any facilities connected with said property at any time during the original or extended term of this lease for the sum of Twelve Thousand and No/100 ($12,000.00) Dollars in cash, provided Lessee shall give Lessors not less than thirty (30) days' notice of Lessee's exercise of this option. Upon Lessee's giving such notice, Lessors agree to furnish free of expense to Lessee abstract of title prepared by a competent abstractor and certified from title in the Government to the date of conveyance, showing good merchantable title to said premises vested in Lessors; and upon the payment of the purchase price herein specified, Lessors shall convey to Lessee or its nominee by general warranty deed a fee simple title in and to said premises and improvements and appurtenances thereunto belonging, free and clear of all liens, encumbrances and charges of whatsoever character, with release of dower, curtesy, homestead, and all statutory rights, and shall convey to Lessee or its nominee by bill of sale or other appropriate instrument with like covenants of warranty, all personal property embraced herein not ordinarily conveyed by deed.

"The giving of such notice by Lessee shall fix and determine the right of Lessee to purchase said premises and property and the obligation of Lessors to sell the same, and a reasonable time thereafter will be allowed Lessors to furnish abstract of title and to cure defects, if any, in said title

preparatory to the delivery of the deed and other instruments of conveyance, and the payment of the purchase price. Such purchase shall serve to cancel the within lease in all particulars, and if Lessors shall have been paid rents subsequent to the date of delivery of deed, such payment shall be applied on and constitute a part of the purchase price of said properties.

"If at the time of purchase there shall be a valid mortgage, trust deed or like encumbrance against said premises, Lessee shall have the right to deduct from the purchase price and pay to the proper party the amount of the indebtedness evidenced by such instrument if such payment can then be made without having to pay a premium or bonus. If said indebtedness cannot be paid off or fully satisfied without premium or bonus, Lessee shall have the right to deduct from the purchase price and retain the amount of such indebtedness as of the date of delivery of the deed, and conveyance of said premises and property shall be made subject to said indebtedness, Lessee assuming the payment thereof.

## "Article XV.

"Purchase Refusal:

"In the event Lessors shall receive from a third party at any time during the term of this lease a bona fide offer to purchase the leased premises, and shall decide to sell the same for the amount named in said offer, Lessors shall promptly give to Lessee written notice of the terms of such offer and Lessors' willingness to sell for the price offered, and Lessee shall have the option and privilege of purchasing said premises at said price and shall notify Lessors in writing within ten (10) days after the date it receives notice from Lessors whether it will purchase said premises for the amount specified in said offer. In the event Lessee shall not elect within said ten-day period to purchase for the amount specified in said offer, Lessors may thereafter sell said premises to the party making the offer, subject, however, to the leasehold estate herein granted to Lessee. If for any reason said premises are not sold to such party, notice of any subsequent bona fide offers acceptable to Lessors shall

be given to Lessee upon the same terms and conditions for acceptance or refusal as hereinabove provided.

"If Lessee elects to purchase said premises under this purchase refusal, Lessors shall furnish abstract of title and shall perfect title and shall convey as provided in the preceding Article upon the exercise of the option to purchase."

■ It is readily apparent from the contract as a whole that the parties thereto intended by Arts. XIV and XV thereof to set forth the covenants, conditions and limitations under which appellant might purchase and appellees might sell, either to appellant or to a third party, the demised premises at any time during the term of the lease. In our opinion the conditional right of appellees to sell must be regarded as of equal importance with the conditional right of appellant to purchase the property. All of the related provisions in both quoted articles pertain to the same general subject matter, viz: the permissive and reciprocal rights of purchase and sale of the demised premises at any time during the term of the lease. Therefore, we do not think the court below erred in failing or refusing to construe Art. XIV of the lease contract as a separate and distinct entity, apart from Art. XV, or in construing both articles together in such manner as to give proper meaning and effect to all of the provisions contained in each and both.

■ The grant of a valid and exclusive option to purchase realty constitutes an irrevocable covenant on the part of the optionor to sell and convey the land to the optionee upon the terms and conditions set forth in the agreements relating thereto. However, the mere grant of such option is only a continuing offer on the part of the optionor and it does not constitute a bilateral or enforceable contract of purchase and sale between the parties unless or until such option is exercised by the optionee through an unconditional acceptance of the offer within the time and in the manner specified in the agreement. Tex.Jur. Vol. 10, p. 56, Sec. 31, and authorities; Landlord and Tenant, § 82, C.J.S. Vol. 51, page 639 and authorities; Moore Bros. v. Kirkpatrick,

Tex.Civ.App., 172 S.W.2d 135, pt. 3; Gambill v. Snow, Tex.Civ.App., 189 S.W.2d 33, pt. 8 (er. ref. Wm.) and authorities.

■ The option here granted to appellant of purchasing the demised premises at any time during the term of the lease for the sum of $12,000 was expressly conditioned upon the proviso that "Lessee shall give Lessors not less than thirty (30) days' notice of Lessee's exercise of this option." Appellant suggests in its brief that such proviso was inserted in the contract merely as "a period of convenience to Lessors, during which the Lessor could prepare and furnish an abstract of title to the premises." It is also suggested that such proviso was intended to mean that the option must be exercised not less than 30 days before the expiration of the original or extended term of the lease. We cannot agree with either of these suggestions. If such proviso was inserted for the purpose of specifying the time within which appellees were required to furnish an abstract, then there would have been no occasion to insert in the second paragraph of Art. XIV the conflicting provision that "a reasonable time" would be allowed appellees to furnish abstract after the giving of such notice. If such proviso was intended to mean that the option must be exercised not less than 30 days before the expiration of the original or extended term of the lease, then we see no reason why appellant did not clearly express such intention in the language used in Art. XIII with reference to the exercise of its extension option. Although the intended purpose of such clause is not free from doubt when considered by itself or in its immediate context only, we think when such clause is considered in connection with all the provisions contained in the contract as a whole its true meaning and necessary effect was thereby to provide that appellant could not completely accept the option to purchase for $12,000 until it had given appellees at least 30 days' notice of its exercise of the option so granted.

Upon appellant's giving *such* notice, that is to say, not less than 30 days' notice of its acceptance or exercise of the option therein granted, appellees agreed to furnish an abstract of title and in due time to convey the premises to appellant. This agreement, however, was subject to the the further provisions, conditions and limitations contained in the contract as a whole. While it was provided in the second paragraph of Art. XIV that the giving of *such* notice, that is, not less than 30 days' notice, "shall fix and determine the right of Lessee to purchase said premises and property and the obligation of Lessors to sell the same," there was no provision in said paragraph or in any subsequent article of the contract as to the amount which should be paid and received for the right of appellant to purchase and the obligation of appellees to sell the property, as thereby fixed and determined, nor was appellant thereby obligated to purchase the property for any amount greater than $12,000, if indeed it thereby became obligated to purchase for that amount even upon the expiration of 30 days after the giving of notice. Consequently, we hold that a binding and enforceable contract of purchase and sale for the sum of $12,000 did not come into existence immediately upon the giving of notice to appellees of appellant's exercise of the purchase option granted in Art. XIV.

■ After duly considering the contract from its four corners and applying all of its material provisions to the controlling facts before us, we interpret the language actually used in Arts. XIV and XV thereof, together with the implications necessarily resulting therefrom, to mean in substance and effect that appellees thereby granted to appellant the exclusive option to purchase the demised premises at any time during the term of the lease for the sum of $12,-000 upon the express condition that 30 days' notice thereof be given to them, with the further limitation that if they should receive from a third party during such 30 day period an offer to purchase the property for a greater amount then, in that event, the exclusive option so granted to appellant of purchasing the demised premises would lapse and abate unless it should exercise its further option to purchase for the greater amount. Shell Oil Co. v. Blumberg, 5 Cir., 154 F.2d 251.

Such interpretation gives reasonable and harmonious meaning and effect to all the

related provisions contained in both articles. Not only so, but, in our opinion, the interpretation or construction thereof, as contended for by appellant, would inject irreconcilable conflicts into the contract as a whole, would render the proviso for 30 days' notice of appellant's exercise of the option to buy for $12,000 entirely meaningless and of no legal force or effect whatsoever, would greatly impair, if not completely destroy, the valuable right of appellees to sell the property to a third party under the terms and conditions set forth in Art. XV of the indenture, and would wrongfully result in the substitution of a new contract under the guise of construing that which the parties signed.

If the interpretation which we have thus placed upon Arts. XIV and XV is not the clear and unambiguous meaning of the language actually employed therein, the provisions thereof are undoubtedly susceptible of that fair and reasonable construction and since appellant selected the language used in the contract the same should be construed most favorably to appellees. Armory Mfg. Co. v. Gulf, C. & S. F. R. Co., 89 Tex. 419, 37 S.W. 856, 59 Am.St.Rep. 65; Whittington v. Cameron Compress Co., Tex.Civ. App., 268 S.W. 216; Id., Tex.Com.App., 280 S.W. 527; Magnolia Petroleum Co. v. Aiken, Tex.Civ.App., 289 S.W. 152; Powers v. Sunylan Co., Tex.Com.App., 25 S.W. 2d 808; Holt v. Wilson, Tex.Civ.App., 55 S.W.2d 580; Hinson v. Noble, Tex.Civ. App., 122 S.W.2d 1082.

From what has been said it necessarily follows that in our opinion appellant was not warranted in continuing to assert the right to purchase the demised premises for the sum of $12,000, and thereby to cancel the lease, after it had received written notice from appellees dated November 25, 1946, that they had been offered $17,500 for the property. By persisting in the unwarranted assertion of that right for more than 30 days after receiving such notice, it is clear to us that appellant thereby disavowed the title of appellees as landlord breached the contract which it now seeks to enforce, and matured the optional right of appellees to terminate the lease and declare the same at an end within the pur-

view and meaning of Art. XVI of the indenture. Vol. 52 C.J.S., Landlord and Tenant, § 758, sub. b (3) page 632; Wildey Lodge No. 21 v. City of Paris, 31 Tex.Civ. App. 632, 73 S.W. 69; Rice v. Schertz, Tex. Civ.App., 187 S.W. 245.

Finding no reversible error in the record, all of appellant's points are overruled and the judgment of the trial court is affirmed.

TIREY, Justice (dissenting).

At a former day of this court I wrote the unanimous opinion of this court reversing and rendering the judgment of the trial court. I have not changed my views with reference to the disposition that should be made of the case, and accordingly file my dissenting opinion.

All material facts have been stipulated and the sole question before us is one of law. The question presented in the lower court and here requires an interpretation of Articles XIV and XV of the lease contract copied in the majority opinion.

On September 20, 1935, the Sinclair Refining Company and Allbritton and his wife entered into a lease agreement which covered a specific tract of land in the City of Waco for a primary term of ten years. The lease agreement and commencement of its term was put into effect as of January 16, 1936, by supplemental agreement between the parties. The lease agreement was extended by the parties for an additional period of five years beginning on January 16, 1946, and was in full force and effect on November 13, 1946, the date on which the Sinclair Refining Company mailed to appellees from its New York office notice that it had elected to exercise its option to purchase the leased premises in accordance with the provisions of Article XIV. The written notice, with postage prepaid, was deposited in the United States registered mail and it provided in effect that Sinclair Refining Company had elected to exercise its option to purchase the leased premises for the sum of $12,000, as provided for in Article XIV. This notice was received by Allbritton and his wife on November 21, 1946. On November 25, 1946, appellees mailed to appellant Refining Company a letter stating that appellees had re-

ceived an offer of $17,500 for these premises and that appellees stood ready to sell the premises to the Sinclair Company for the sum of $17,500. On November 29, 1946, after receipt of such notice, the Sinclair Refining Company notified Allbritton and wife by mail that it was standing upon the right to purchase the property for the sum of $12,000 in accordance with the purchase option and the notice given by it on November 13, 1946. On February 12, 1947, Allbritton and wife brought a formal action in trespass to try title against Sinclair Refining Company and the sub-lessees of Sinclair Refining Company, pleading the lease contract whereby Sinclair Refining Company held the premises, and alleging a breach and repudiation of same on the part of the Refining Company. The allegation of breach and repudiation was grounded on the act of Sinclair Refining Company in refusing to purchase the premises for $17,500, and in standing on its rights under the duly exercised purchase option. The Sinclair Refining Company and its sub-lessees answered by appropriate pleading and pertinent to this discussion Sinclair tendered the sum of $12,000 and prayed that a decree of specific performance be entered requiring appellees to convey the leased premises to it in accordance with the purchase option contained in Article XIV of the lease agreement. The court (non-jury) awarded title and possession of the leasehold premises to the Allbrittons and denied the Sinclair Refining Company any relief upon its cross-action and defendants have appealed.

Point 1 assails the judgment of the court in refusing to give effect to appellants' purchase option as contained in Article XIV of the lease contract. I think this contention should be sustained.

Appellees contend in effect that upon the exercise by appellant of its purchase option that they had a period of thirty days within which to invoke the purchase refusal as provided for in Article XV. Appellees in their brief say: "We submit the language with reference to the conditions under which the option could be exercised is complete and explict within itself. * * * The language made the option conditioned upon the giving of not less than thirty days notice. The thirty days was just as much a condition as the giving of any notice at all. The notice was not complete until it had been given thirty days. It is true that when an option is accepted within the time and in the manner specified, it becomes a completed contract, unless, of course, otherwise provided. But in this case, until the thirty days had elapsed, the time and manner specified had not been complied with, and therefore there was not a completed contract upon the giving of the notice. The ones preparing the contract recognized this and provided that the giving of the notice fixed the obligation of the lessors to sell but merely fixed the right of the lessee to purchase. Until there is a completed contract of sale, it could not be argued that the lease did not remain in full force and effect." The majority opinion in effect adopts this view. I cannot agree with such construction and think that it is a strained one.

First of all, we must consider the general rule as to options. In 10 Tex.Jur. 56, 57, we find: "An option is a mere offer which binds the optionee to nothing and which he may or may not accept at his election, within the time specified. Until so accepted it is not, in legal effect, a completed contract, but when accepted, within the time and in the manner specified, it becomes a completed contract, binding on both parties." In 51 C.J.S., Landlord and Tenant, § 82, pages 639, 640, we find: "The mere option to purchase binds only the lessor and must be accepted before a completed and enforceable contract of sale is effected; the option and the acceptance constitute the complete contract. On proper acceptance the option becomes a bilateral contract of purchase and sale, binding on both parties. Thereafter the lessor may not withdraw the option, or refuse to convey on the tender of the balance of the purchase price, or change the price to be paid; and the tenant may be sued on the contract if he neglects or fails to make the required payments. Equitable title vests in the lessee, and the option becomes completely merged in the contract of purchase." My view is that the above rule is applicable to the factual situation here.

Going back to Article XIV of the contract I find that it is comprehensive and explicit. First of all, it gives an exclusive option and the privilege to the lessee of purchasing the leased premises during the term of the lease or any extension thereof for the fixed sum of $12,000 in cash, provided lessee shall give lessors not less than thirty days notice of lessee's exercise of the option. Since the lessee exercised the option within said thirty day period, this provision of the purchase option agreement passes out of the case. In the second place, upon lessee giving such notice to the lessors, their duty became fixed and they became obligated to furnish to lessee free of expense an abstract of title prepared by a competent abstracter and certified from title in the government to the date of conveyance showing a good and merchantable title to the property. The duty imposed upon the lessors to furnish to lessee abstract of title is certainly contrary to the interpretation of lessors (and the holding of the majority opinion) that the lessors could immedately begin seeking a bona fide purchaser for the property for the purpose of increasing the purchase option agreement and that they would have thirty days in which to do so. I think such construction is eliminated and precluded by the second paragraph of Article XIV, which provides: "The giving of such notice by Lessee shall fix and determine the right of Lessee to purchase said premises and property and the obligation of Lessors to sell the same, and a reasonable time thereafter will be allowed Lessors to furnish abstract of title and to cure defects, if any, in said title preparatory to the delivery of the deed and other instruments of conveyance, and the payment of the purchase price. Such purchase shall serve to cancel the within lease in all particulars, and if Lessors shall have been paid rents subsequent to the date of delivery of deed, such payment shall be applied on and constitute a part of the purchase price of said properties." The foregoing provision is clear and comprehensive and expressly fixes the legal rights and duties of the parties at the time the notice is deposited in the mail, and provides in detail as to how the relation of landlord and tenant shall be terminated, and such

provision is in irreconcilable conflict with the view of the majority opinion to the effect that the lessors would have thirty days in which to seek out a purchaser for the purpose of increasing the purchase option agreement. Since appellant exercised the option agreement granted it and gave notice (as provided in the lease) to appellees before appellees had a bona fide offer of $17,500 and before said offer was submitted to the appellant, in my opinion an enforceable contract was thereby created and the lessors became obligated to sell and the lessee to buy for the sum of $12,000. My view is that Article XIV is unconditional and contemplates a contract within its own terms and is not in conflict with any of the other provisions in the contract. The construction given to the contract by the majority opinion is, in effect, that the right of the Refining Company to purchase the premises for $12,000 was conditional upon the failure of the Allbrittons to obtain a greater bona fide offer from a third party within said thirty day period. Such a condition substitutes a new contract between the parties. Not only that, but such construction is in direct and irreconcilable conflict with the second paragraph of Article XIV, which provides that the giving of the notice shall determine the rights of the lessee to purchase the property and the obligation of the lessors to sell for the sum of $12,000 cash. The giving of the notice itself created the respective obligations. I think the case of Barnhart v. Stern, 182 Wis. 197, 196 N.W. 245, supports my view. Nor do I find my view in conflict with Shell Oil Co. v. Blumberg, 5 Cir., 154 F.2d 251. The first to invoke the provisions of Articles XIV and/or XV fixed the duties and obligations of the respective parties. My view is that the only provision in the contract relating to such third party offer is found in Article XV of the lease agreement. It is clear that Article XV is not an irrevocable offer but is merely a covenant on the part of the lessors that in the event lessors should desire to sell the premises at any time during the term of the lease agreement, the lessee shall have the right to buy at the price offered by a bona fide purchaser. It is obvious that such price might well be above or below that stated in Article XIV. The purchase

refusal merely contemplates that if lessors desire to sell, they must first offer the premises to lessee and that lessee may or may not accept such offer at its election. The purchase option was put into the lease plainly for the benefit of the lessee and must be construed in that light. An option is an irrevocable option for the full term thereof and it is a covenant running with the land. See Stone v. Tigner, Tex.Civ. App., 165 S.W.2d 124, 127 (writ ref.); Keogh v. Peck, 316 Ill. 318, 147 N.E. 266, 38 A.L.R. 1151.

I have carefully considered the lease agreement in its entirety and my view is that the lease is unambiguous and admits only the construction which I have given it.

My view is that since the cause has been fully developed, the judgment of the trial court should be reversed and here rendered in favor of Sinclair Refining Company decreeing specific performance of the contract for the sale of the property as prayed for in its cross-action filed in the trial court, and that such writs issue as may be necessary for the proper enforcement of the decree.