# MARCH, 1949

### SINCLAIR REFINING COMPANY ET AL V. C. B. ALLBRITTON ET UX.

No. A-1898. Decided January 19, 1949.
Rehearing overruled March 2, 1949.
(218 S. W., 2d Series, 185.)

*Cantey, Hanger, McKnight & Johnson, Alfred McKnight, Warren Scarborough, Sloan Blair* and *W. B. Thompson,* all of Fort Worth, for petitioners.

The Court of Civil Appeals erred in refusing to enforce the binding executory contract for the sale of the land in dispute, which contract came into existence immediately upon the giving to respondents by petitioner notice of petitioner's exercise .of the purchase option. Stone v. Tigner 165 S. W. (2d) 124; Barnhart v. Stern, 182 Wisc. 197, 196 N .W. 245; Adams v. Helburn, 198 Ky. 546, 249 S. W. 543.

*Scott, Wilson & Cureton,* of Waco, *Black & Stayton* and *Charles L. Black,* of Austin, for respondents.

MR. JUSTICE GARWOOD delivered the opinion of the Court .

The sole question for our decision is whether Sinclair Refining Co., defendant in the trial court and a petitioner here,

is entitled to purchase for $12,000.00 a certain filling station property in Waco, Texas, under the option provisions of a lease made to it by respondents Allbritton and wife, who were plaintiffs below. The suit was in the form of trespass to try title against petitioner Sinclair and its subtenants in possession under the lease, who responded with a plea of not guilty and cross action for specific performance of the option which petitioner Sinclair had theretofore sought to exercise. On a trial to the court, involving no disputed facts, respondents were successful. The judgment was affirmed by the Court of Civil Appeals, Associate Justice Tirey dissenting. 213 S. W. (2d) 139.

For convenience we refer hereafter to the defendant-petititioners as lessee and the plaintiff-respondents as lessors.

Lessee's option derives from Article XIV of the lease entitled "Purchase Option" and hereafter quoted in full. In brief the article purports to give lessee "the exclusive option and privilege" to purchase the premises "at any time during the original or extended term of this lease" for $12,000.00 cash, "provided Lessee shall give Lessors not less than thirty (30) days' notice of Lessee's exercise of this option." Immediately following the "Purchase Option" article, the lease also contains, as article XV, a stipulation entitled "Purchase Refusal", likewise hereafter fully quoted. It provides substantially that, if "at any time during the term of this lease" lessors should get a bona fide offer for the leased premises from a third party and "decide to sell", they shall give notice of the terms of such offer to lessee, who will then have the refusal of the property on the same terms for ten days, after which period, if lessee fails to purchase, lesesors will be at liberty to sell to the third party "subject, however, to the leasehold estate herein granted to Lessee."

On November 21, 1946, during, but over thirty days before the end of, the renewed term of the lease (which had been duly extended pursuant to an extension provisions in article XIII), lessee delivered to lessors through the mail a proper form of notice stating that it exercised its purchase option. However, on November 25, 1946, lessors in turn notified lessee in due form that they had received a bona fide offer of $17,500.00 (or $5,500.00 more than the price stipulated in the "Purchase Option" article) for the premises from a third party, had decided to sell and accordingly tendered the lessee the refusal of the $17,500.00 offer under the "Purchase Refusal" article of the lease. Lessee thereupon notified lessors that it considered its notice of November 21st to have established a firm contract of purchase and sale for $12,000.00, which was not affected by the

subsequent action of lessors under the "Purchase Refusal" article. This litigation followed.

The full text of the two articles in question is as follows:

## "ARTICLE XVI.

"PURCHASE OPTION:

"In consideration of the premises and further considerations herein specified, Lessors hereby give and grant to Lessee the exclusive option and privilege of purchasing the demised premises and Lessors' right, title and interest in any facilities connected with said property at any time during the original or extended term of this lease for the sum of Twelve Thousand and No/100 ($12,000.00) Dollars in cash, provided Lessee shall give Lessors not less than thirty (30) days' notice of Lessee's exercise of this option. Upon Lessee's giving such notice, Lessors agree to furnish free of expense to Lessees' abstract of title prepared by a competent abstractor and certified from title in the Government to the date of conveyance, showing good merchantable title to said premises vested in Lessors; and upon the payment of the purchase price herein specified, Lessors shall convey to Lessee or its nominee by general warranty deed a fee simple title in and to said premises and improvements and appurtenances thereunto belonging, free and clear of all liens, encumbrances and charges of whatsoever character, with release of dower, curtesy, homestead, and all statutory rights, and shall convey to Lessee or its nominee by bill of sale or other appropriate instrument with like covenants of warranty all personal property embraced herein not ordinarily conveyed by deed.

"The giving of such notice by Lessee shall fix and determine the right of Lessee to purchase said premises and property and the obligation of Lessors to sell the same, and a reasonable time thereafter will be allowed Lessors to furnish abstract of title and to cure defects, if any, in said title preparatory to the delivery of the deed and other instruments of conveyance, and the payment of the purchase price. Such purchase shall serve to cancel the within lease in all particulars, and if Lessors shall have been paid rents subsequent to the date of delivery of deed, such payment shall be applied on and constitute a part of the purchase price of said properties.

"If at the time of purchase there shall be a valid mortgage, trust deed or like encumbrance against said premises, Lessee shall have the right to deduct from the purchase price and pay to the proper party the amount of the indebtedness evidenced

by such instrument if such payment can then be made without having to pay a premium or bonus. If said indebtedness cannot be paid off or fully satisfied without premium or bonus, Lessee shall have the right to deduct from the purchase price and retain the amount of such indebtedness as of the date of delivery of the deed, and conveyance of said premises and property shall be made subject to said indebtedness, Lessee assuming the payment thereof."

## "ARTICLE XV.

### "PURCHASE REFUSAL:

"In the event Lessors shall receive from a third party at any time during the term of this lease a bona fide offer to purchase the lease premises ,and shall decide to sell the same for the amount named in said offer, Lessors shall promptly give to Lessee written notice of the terms of such offer and Lessors' willingness to sell for the price offered, and Lessee shall have the option and privilege of purchasing said premises at said price and shall notify Lessors in writing within ten (10) days after the date it receives notice from Lessors whether it will purchase said premises for the amount specified in said offer. In the event Lessee shall not elect within said ten-day period to purchase for the amount specified in said offer, Lessors may thereafter sell said premises to the party making the offer, subject, however, to the leasehold estate herein granted to Lessee. If for any reason said premises are not sold to such party, notice of any subsequent bona fide offers acceptable to Lessors shall be given to Lessee upon the same terms and conditions for acceptance or refusal as hereinabove provided.

"If Lessee elects to purchase said premises under this purchase refusal, Lessors shall furnish abstract of title and shall perfect title and shall convey as provided in the preceeding Article upon the exercise of the option to purchase."

The phrase in the "Purchase Option" article "not less than thirty (30) days' notice of Lessee's exercise of this option" is, at least when considered alone, ambiguous in failing to state from what date or event the thirty days in question is to precede. Surely it does not mean that lessee had to give two notices thirty days or more apart. But, except for this difficulty, it seems plain that when lessee delivered its notice form on November 21, 1946, this act established the relationship of vendor and purchaser between the parties, which could not be altered by any subsequent action of lessors under the "Purchase Refusal" article.

In Shell Oil Co. v. Blumberg (See C. C. A. 5th Cir.) 154 Fed. (2d) 251, involving a contract generally similar to that here in issue, the lessor gave notice of a third party offer (lessee having given no notice under the purchase option clause), and upon lessee's refusal to meet the third party offer, sold the premises accordingly. This was held to have terminated the lessee's rights under the purchase option so that it could not enforce the latter against the third party purchaser. Conversely it would seem, and such is apparently conceded by lessors, that, once the purchase-option has been validly exercised, such rights as lessors theretofore had under the "Purchase Refusal" article would cease to exist.

■ But lessors say that lessee's notification of November 21st did not exercise the purchase option; that this act could, by reason of the terms of both articles above quoted, including particularly the notice proviso, have no more effect than to cause the purchase option to become exercised and the vendor-purchaser relationship established on the thirtieth day following the notification; and that accordingly, lessors, during those thirty days, were entitled to take advantage of a third party offer above the option and, under the terms of the "Purchase Refusal" article, force lessee to meet that offer or lose all further rights under the purchase option, assuming a third party sale was actually made. Lessors argue that the abovementioned omission from the notice proviso of an express reference to a date or event, which the thirty days or greater period was to precede, leaves the notice provision meaningless, unless the meaning can be supplied from the "Purchase Refusal" article following, which is undoubtedly related to the "Purchase Option" article, and that the notice provision will thus have its due significance if treated as meaning thirty days within which lessors may take advantage of third party offers under the "Purchase Refusal" article. Since the time period of the notice must precede something, lessors' construction would thus be substantially as if the notice clause read "provided Lessee shall notify Lessors of its exercise of this option not less than thirty days before either party is expected to become bound to sell or purchase; and that at the expiration of thirty days following the act of notification, the parties shall become so bound, and lessors shall submit to lessee abstracts of title for examination, unless in the meanwhile lessors shall have received and decided to accept an offer for the premises from a third party as contemplated in the "Purchase Refusal" article of this contract." While the agreement is not artfully written, and lessors' con-

struction of it seems plausible, we think lessee's interpretation is the more sound.

■ The title to both articles indicate that they are inserted for the primary benefit of lessee, and certainly this is true as to the first, that is, the "Purchase Option". The "Purchase Refusal" article seems beneficial to the lessors in that it generally entitles them to force lessee to purchase the property or surrender its purchase option before it might have been inclined to exercise the latter; but the provision also benefits lessee in giving it the refusal of the third party offers. While it may be true in a general sense that option contracts are to be construed against the optionee, it is certainly no less true or less important that a purchase option is largely for the benefit of the optionee and must be construed with this fact in mind. Barnhart v. Stern, 182 Wis. 197, 196 N. W. 245; Butler v. Richardson, ____ R. I. ____, 60 Atl. (2d) 718. In the latter case, under a somewhat similar arrangement to that in question here, it was held that the only benefit to lessor contemplated by the "Purchase Refusal" part of the contract was that the lessor should have a means of disposing of the property, despite the purchase option, in case he should want to sell it at a price *below* the purchase option price before the lessee had decided to exercise the purchase option.

■ In different options, the prerequisite of notification often serves different purposes, and when coupled with a time provision, it might, for example, render the notification void if given later than a certain day or it may be designed merely to afford one or both of the parties a convenient period to do what the circumstances require. But in the usual case, whatever the practical object of the notice requirement, the act of delivering the notices. if performed within the time limit and not otherwise invalid, forthwith converts the option into a contract of purchase and sale. Johnson v. McKeen, 213 Wis. 358, 251 N. W. 226; Mauzy v. Elliott, 146 Neb. 865, 22 N. W. (2d) 142. In the former case, this was held to be so, even though the purchase option expressly provided that after the notification was given a formal contract should be executed. Lessee's construction of the instant contract follows this usual pattern, while lessors' construction, in postponing the effect of the notification until thirty days after the notice document is delivered, produces an unusual type of arrangement.

Lessors' construction also limits, to a rather unusual degree, the practical benefits ordinarily inherent in a purchase option.

The purpose of purchase options is to give the optionee the right to purchase at his election within an agreed period at a named price, which presumably was considered satisfactory by the optionor in case the option should be exercised at any time during the option term. If the price is to be based on what a third party may offer, the result is not a purchase option in the usual sense—what the contract here calls "the exclusive option and privilege of purchasing",—but rather a mere right of refusal which should hardly be called an option at all. If the price is to be the market value of the premises at the time the option is exercised, then usually no price in dollars and cents is named. In a long-time option like that here involved, to allow the optionor, after notice of the optionee's election, to use the very notice document in order to go upon the market for thirty days seeking a third party offer at a higher figure and then compel the optionee to pay the higher price or forfeit his right to purchase, is to make the arrangement largely a mere right of refusal or option to buy at the market price. Particularly since the "Purchase Option" article states in so many words that lessee is "hereby" given an exclusive option to purchase, and the parties have dealt in separate articles with the purchase option and purchase refusal, the former being placed first in the contract document, and since the agreed purchase option price was evidently intended to have significance, one might reasonably begin analysis of the arrangement with the idea that a true purchase option was intended, rather than a mere right of refusal or "option" to buy at the market price. While we are not prepared to follow Butler v. Richardson, supra, to the full extent of limiting lessors' rights under the "Purchase Refusal" article to third party sales *below* the option price, we do consider it good authority that the "Purchase Refusal" article is not to be given precedence over or even equal dignity with the "Purchase Option" article, but is to be regarded merely as a supplement of the latter. Wo do not consider Shell Oil Co. v. Blumberg, supra, as holding the contrary.

The emphatic provision in the "Purchase Option" article that "The giving of such notice by Lessee shall fix and determine the right of Lessee to purchase and the obligation of Lessors to sell * * *" must be given consideration, and, as lessors say, the words "such notice" are doubtless the equivalent of "the abovementioned notice of not less than thirty days." A clear object of this provision is to determine the date on which the option has been effectively exercised. The phrase "shall fix and determine" strongly suggest also that another object is to afford concrete evidence or proof as to what par-

cular calendar day it is on which the determining event occurred. This in turn suggests lessee's interpretation to the effect that the act of delivering the notice document is what shall "fix and determine" and furnish proof of the date on which the purchase option was exercised. We believe such interpretation to be more natural and certainly less abstract than that of lessors, which might properly be paraphrased thus: "The completion of the option exercise process, which shall be deemed to occur on the thirtieth day following the date of delivery of the notice document shall fix and determine * * *". Lessee's interpretation, of course, carries the conclusion that the purchase option having been effectively and unconditionally exercised on November 21st when the notice document was delivered, any rights of lessors under the "purchase Refusal" article ceased to exist at that time.

As before stated, lessors apparently concede—and we think necessarily so—that, assuming the delivery of the notice document did not itself exercise the purchase option, nevertheless on the thirtieth day following, and in the absence of any intervening notice of a third party offer, lessors would be bound in a vendor-purchase contract. (We do not understand lessors to urge that the contract contemplates two notices). This brings on consideration of the fact that the "Purchase Refusal" article is by its own terms to operate only "In the event Lessors shall receive from a third party at any time during the term of this lease a bona fide offer to purchase the leased premises, and *shall decide to sell* the same for amount named in said offer, * * *". (Underscoring supplied). Under lessors' construction of this contract, this requirement of lessors' *decision* to sell can have no meaning, as applied to the facts of the present case, in which, the lessee having notified lessors of its election to purchase under the purchase option, lessors are either bound to sell to lessee after thirty days for $12,000.00 or on the other hand can sell to the third party for $17,500.00 if lessee refuses to meet the latter price. Lessors in such a case have nothing to "decide". It would be absurd to require that they come to a decision to sell to the third party for the higher price when, by lessors' construction, they can—and obviously will—sell to him. The inference from the foregoing is that the "Purchase Refusal" article simply does not apply after lessee has notified lessors of its exercise of the purchase option.

The latter conclusion is also supported by a provision of the "Purchase Refusal" article reading as follows:

"If for any reason said premises are not sold to such party, notice of any subsequent bona fide offers acceptable to Lessors shall be given to Lessee upon the same terms and conditions for acceptance or refusal as hereinabove provided."

This provision evidently contemplates that the article in question shall operate only under circumstances where lessors are not bound to sell and are not to become so bound within a definite period in the absence of an intervening third party offer. If we admit that lessee's act of notification would bind lessors after thirty days, subject only to an intervening third party offer, the parties could hardly have had in mind that various abortive third party offers and decisions of lessors to accept them might occur during the thirty-day period.

In the last analysis, lessors' case rests on their proposition that, unless their construction is adopted, the words "thirty days" in the purchase option notice provision "not less than thirty (30) days' notice" are utterly meaningless, because the contemplated time period would thus be unrelated to any definite act or event. We cannot agree with this conclusion. The phrase in question is an express proviso following the statement that the purchase option is to purchase "at any time during the original or extended term of this lease". While the proviso is indeed not clear in itself or as clear as it might be in any event, it can be reasonably interpreted as a limitation on the otherwise unlimited option period granted, together with the requirement of a written document to evidence the fact and date of lessee's election to purchase. The statement of an unlimited or long period, followed by a proviso which operates to limit or shorten it and at the same time serves some other purpose is not a very unusual form of expression. The words "not less than" are consistent with this interpretation, whereas they do not seem entirely consistent with lessors' construction that they became bound thirty days after notification in the absence of an intervening offer. Lessors say, however, that the notice proviso does not mean thirty days or more before the end of the lease, because, if the parties had so intended, they would have used language as explicit as that used in article XIII of the lease dealing with extension of the principle term and requiring lessee to "give written notice to Lessors of its election to exercise this option in less than thirty (30) days *before the expiration of the original term of this lease.*" (Underscoring supplied). The argument, while plausible, is not convincing under the circumstances. Contracting parties of course should, but by no means do, always describe the same idea in the same

instrument in the same clear terms. In this particular contract they failed to do so in more than one instance. For example, the very "Purchase Refusal" article on which lessors must rely, is stipulated as effective "during the *term* of this lease", whereas the "Purchase Option" article immediately preceding it expressly provides "at any time *during the original or extended term* of this lease." (Italics supplied). If we follow lessors' suggested rule of construction here, it might well mean that the "Purchase Refusal" article expired with the end of the original lesse term long before occurrence of the events here involved.

While, as stated, the contract is imperfectly written, and, as indicated in the first paragraph of the dissenting opinion below, has caused some difficulty in its interpretation, we think the construction we have given it is the more reasonable and fair, and operates to harmonize reasonably the various provisions of the instrument, doing violence to none.

The judgment of the Court of Civil Appeals is reversed and judgment here rendered that respondents, C. B. Allbritton and wife, are denied the relief sought in their suit against petitioners, Sinclair Refining Co. et al, and that said named petitioner is awarded specific performance of its purchase option pursuant to the prayer of its cross action against said respondents.

Opinion delivered January 19, 1949.

Motion for rehearing overruled March 2, 1949.