## SINCLAIR REFINING CO. v. CLAY et al.

### Civ. No. 26158.

United States District Court
N. D. Ohio, E. D.

Jan. 4, 1951.

Hubert B. Fuller, Cleveland, Ohio, for plaintiff.

Carpenter & Carpenter, Tiffin, Ohio, for defendant.

JONES, Chief Judge.

This is an action for specific performance of a purchase option in a lease.

A Mr. Robertson leased the property in question to plaintiff Sinclair Refining Company in 1937 although he did not acquire title to the property until July 8, 1938 This lease, prepared by Sinclair, was for a ten year term and included a provision for a five year extension. In the lease Sinclair also was given a purchase option and a first refusal option. In 1943 Robertson sold the property to defendant Ada M. Clay and while it could be assumed that Sinclair at the time had been given first refusal, and declined to exercise this option, yet the evidence of notice to lessee as required was not conclusive. On November 4, 1948, Sinclair notified Mrs. Clay that it was exercising its option to purchase the property for $8,500. A few days thereafter Mrs. Clay secured an offer, which it may be assumed was bona fide, to purchase the property for $18,500, and on November 18th she offered Sinclair first refusal at that price.

Sinclair contends that its exercise of the option fixed the rights and duties of the respective parties, and that no subsequent action on the part of Mrs. Clay could re-lease her from her obligation to convey the property for $8,500. Mrs. Clay on the other hand claims (1) that Sinclair's purchase option was lost when it refused to purchase from Robertson and (2) if it was not lost, the purchase option and first refusal option must be construed together in such a way as to give Mrs. Clay thirty days from notice of the exercise of the purchase option to secure a purchaser who would pay a higher price for the property, and Sinclair would be given first refusal at that price. The important question thus concerns the construction and interpretation to be given to the purchase and first refusal options, Articles XIV and XV of the lease which are as follows:

"Article XIV

"*Purchase Option:*

"For the considerations herein named, Lessor hereby gives and grants to Lessee the exclusive option and privilege of purchasing the leased premises, including all, if any, of Lessor's improvements and property thereon, whether real, personal or mixed, free and clear of all liens and encumbrances, for the sum of Eighty Five Hundred and no/100 Dollars ($8500.00) in cash at any time during the last five (5) years of the lease term, or any extension or renewal thereof;

"Provided Lessee shall give Lessor not less than thirty (30) days' notice of Lessee's election to exercise this purchase option. Upon Lessee's giving such notice, Lessor shall comply with the requirements of the second succeeding Article, entitled 'Conveyance Requirements.'

"Article XV

"*Purchase Refusal:*

"In the event Lessor shall receive from a third party at any time during the term of this lease a bona fide offer to purchase the leased premises at a specified price, whether such price be first fixed by Lessor or the third party, and Lessor shall decide to sell the same for such amount, Lessor shall promptly give to Lessee notice of the terms of such offer, and of Lessor's will-

ingness to sell for the price offered, and Lessee shall have the first refusal and privilege (which will hereafter be referred to as an 'option') of purchasing said premises at such price; such option to be exercised within ten (10) days after Lessee receives notice from Lessor, by Lessee's notifying Lessor that it will purchase said premises for the amount specified in said offer. In the event Lessee shall not give Lessor notice, within said ten-day period, of its election to purchase for the amount specified in said offer, Lessee shall not be obligated to purchase, and Lessor may thereafter sell said premises to the party making the offer; subject, however, to this lease and to the leasehold estate herein granted, and to the extension and/or additional purchase options, if any, herein granted to Lessee. If for any reason said premises are not sold to such party, notice of any subsequent bona fide offers acceptable to Lessor, shall be given to Lessee upon the same terms and conditions for acceptance or rejection as hereinabove provided."

 Purchase option agreements in leases are not separate and distinct offers which can be withdrawn before acceptance. The giving and acceptance of an option to buy is enforceable and the landlord does not have the right to refuse to carry out his agreement after the lessee exercises his option in accordance with the terms of the lease. Furthermore, such option is a covenant which runs with the land and a grantee of the lessor is bound by the terms of the covenant. Thompson on Real Property, Sec. 1325–1330. This seems to be the general law on this subject, and indeed the parties to the lease intended that any grantee should take the property subject to Sinclair's purchase option (Article 15). Mrs. Clay admittedly knew of the terms of the lease and she accepted such terms in writing (Plaintiff's Exhibit 5). No other conclusion can be reached than that the purchase option was a continuing obligation which Mrs. Clay must honor.

Defendant's contention that Sinclair's purchase option was lost when Robertson sold the property is based on the case of Shell Oil Co., Inc. v. Blumberg, 5 Cir., 154 F.2d 251 and a statement appearing in 3 Thompson, 1329, as follows: "When a lessee is given first privilege of purchasing the premises he must, after notice from the lessor of the receipt of a bona fide offer, elect to exercise his privilege in accordance with the terms of the lease or the right is lost."

Here, of course, we are dealing with Sinclair's purchase option, and not its first refusal option. These two options are separate and distinct. It well may be that failure to exercise a first refusal option after proper notice extinguishes such option, and the language of Article XV could be so construed; but loss of this option still leaves the purchase option upon which Sinclair bases its action.

In the Blumberg case [154 F.2d 252] it was held that a failure to exercise a first refusal option extinguished both the first refusal option, and the purchase option. But in that case, and correctly so, the court held that the first refusal option modified the purchase option, and the language in the lease to which the court must have been referring is as follows: "In the event of a sale to any third party by the Lessor, and in the event such purchaser should thereafter desire to sell said property Lessee shall have the like option to purchase at the price offered by any bona fide prospective purchaser * * *; it being understood that this right of the Lessee to purchase at the offered price shall be a continuing right during the existence of this lease whenever * * * any subsequent owner * * * may desire to sell".

This section by expressly providing that the first refusal option was a continuing obligation impliedly indicates that the original parties intended that the purchase option would continue only so long as the original lessor held the fee. It seems to me that the court there was relying on this language in holding that the purchase option was extinguished, and was not announcing a general principle of law to govern purchase options regardless of the language used in that lease by the parties. In the lease here in question the parties agreed as follows: "* * * and Lessor may thereafter sell said premises to the party making the offer; subject, however,

to this lease and to the leasehold estate herein granted, and to the extension and/or additional purchase options, if any, herein granted to Lessee."

Contrary to the Blumberg case, the parties here expressly agreed that the purchase option was to continue in the event of a sale to a third party, and this intent must be carried out by the court, even if it does mean that the first refusal option becomes only a device by which lessor could induce an acceleration of Sinclair's decision to purchase by affording it an opportunity to purchase at a price more advantageous to it than the price fixed in the option. Butler v. Richardson, 74 R.I. 344, 60 A.2d 718.

■ Defendant's second main defense was considered by the Supreme Court of Texas in Sinclair Refining Co. v. Allbritton, 147 Tex. 468, 218 S.W.2d 185, 8 A.L.R. 2d 595. In a well reasoned opinion the court held that the exercise of the purchase option fixed the rights and duties of the parties, and that the lessor did not have thirty days in which to secure an offer which the lessor had to meet. My opinion is that this decision is correct, and ought to be adopted as the law here. It follows then that Mrs. Clay, when she received notice of the exercise of the purchase option, became bound by the terms of that option, and she could not by securing a bona fide offer within thirty days force Sinclair to meet the offered price.

The following defenses as I recall were abandoned by defendant at trial but the defendant has reasserted them in her brief and the court should give some consideration to them.

■ 3) Defendant claims that failure to pay rent as stipulated voided the lease including all options. It is true that for a period of at least one year the parties agreed to reduce the rent $5.00 a month. This agreement was in writing and has a stated consideration. Defendant accepted the reduced rent for the period covered by this agreement and after its end accepted rent according to the terms of the original lease. She at no time expressed a desire to terminate the lease, and her conduct constitutes a waiver of breach, if any, of the lease. According to the very annotation cited by defendant, specific performance of the purchase option will be granted under circumstances such as these. 115 A.L.R. 375.

■ 4) Defendant contends that specific performance should be denied because no tender was made until trial. Unless the lease provides otherwise, and this lease does not, no tender is necessary until the lessor is willing and able to provide the title called for by the lease. Since at no time has lessor ever offered to carry out her duties under the lease, she cannot now say that plaintiff should be denied relief because it did not tender the purchase price. Butler v. Richardson, supra.

■ 5) Defendant also claims that since Robertson did not have title to the property at the time the lease was executed, no valid lease ever existed. The doctrine of estoppel by deed is applied to leases and since Robertson at a later time did acquire title to the leased property, neither he nor his assigns can now claim that the lease is invalid. Perhaps if Sinclair knew that Robertson did not have title when it took the lease, this rule would not apply. No proof was offered on this point and it is my conclusion that this defense is inadequate. 24 O.Jur., Landlord & Tenant, Sec. 128.

■ 6) Finally defendant contends the lease was void because the premises were sublet without Mrs. Clay's approval. It needs no citation to point out that a lessee may sublet as desired unless the lease provides otherwise. The lease here does not so provide and this defense is of no avail.

My conclusion is that plaintiff is entitled to the relief prayed upon payment of the purchase price to the defendant in accordance with the terms of the lease.